## EZEKIEL D. DYER *et al. versus* FITZ-HENRY HOMER, Administrator, &c.

In an action on a promissory note not negotiable, brought in the name of the promisee, but for the benefit of an assignee for a valuable consideration and without notice of a fact which would invalidate the note, the promisor may make the same defence as if the note had not been assigned.

Where a bill of sale of chattels was given for the purpose of preventing them from being attached by the creditors of the vendor, but the chattels were not delivered, it being agreed that they should remain in the possession and control of the vendor, and the vendee gave therefor his promissory note, not negotiable, upon the understanding that it should not be used, but the promisee assigned it to a third person for a valuable consideration, it was *held*, that although the sale was invalid as against the creditors of the vendor, yet that as between the vendor and vendee it was binding and constituted a valid consideration for the note, and consequently an action on the note in the name of the promisee for the benefit of the assignee, might be maintained.

Bu the vendee having received a part of the chattels and the residue having been consumed or sold by the vendor or levied on by his creditors, it was *held*, that there was a failure of the consideration of the note, except as to the property received by the vendee, and that it was a defence *pro tanto* against the note.

Although the effect of a husband's testimony may be to increase a fund given to trustees for the use and benefit of his wife, and the income of which is to be paid over to her for her sole use and upon her own receipts under her hand, he is not therefore an incompetent witness, his interest being contingent.

THIS was assumpsit on a promissory note, dated the 23d of December, 1835, for $1500, made by the defendant's intestate Eugene A. Homer, payable to E. D. Dyer and S. Dyer, the plaintiffs, (but not to their order,) in six months.

At the trial, before *Wilde* J., the defendant offered Philo S. Shelton as a witness, but he was objected to as being interested. To show his interest, it was proved or admitted, that the intestate was the son of Benjamin P. Homer, and that upon his death the father, who was then living, became sole heir to his property; and that afterwards the father died, leaving a will, which was proved and allowed in the Probate Court. By the will, after certain specific legacies, one third of the residuum of all the testator's estate was given to certain persons in trust for the wife of Shelton, and the trustees were to hold the same for her use and to pay over the rents, interest, dividends and profits to her for her sole use and upon her own receipts under her hand. It was contended that Shelton was thus in-

terested to increase such residuum and in the event of the suit But the objection was overruled.

Shelton testified, that before the note in suit was made, E D. Dyer, one of the plaintiffs, at an interview with the intestate, represented to him that he wished to put his property beyond the reach of attachment by his creditors, and asked the intestate to take a bill of sale of certain personal property, viz. coal, hogsheads, and other articles, and give his promissory note therefor, not payable to order, assuring him that the note was not to be used and could not be ; that thereupon a bill of sale was made and delivered by the plaintiffs to the intestate, and the note in suit was given ; that the property was not delivered to the intestate, it being agreed that the articles should remain in the possession and control of the plaintiffs, to be used and disposed of by them in the same manner as if no such bill of sale or note had been given ; and that subsequently the plaintiffs sold a part of the hogsheads in the usual course of business, and consumed a part of the coal in carrying on a distillery, for which purpose it was known to the intestate that the coal was originally purchased by the plaintiffs. The witness further testified, that in June, 1836, after the death of the intestate, his administrator commenced an action against E. D. Dyer, one of the plaintiffs, and attached the horse and such other articles of property mentioned in the bill of sale, as had not been previously disposed of or consumed by the plaintiffs ; that the horse was taken away by the officer and offered for sale, but there being no bidders, the witness took the horse into his possession, and, as agent of the administrator, sold it for $ 25, which sum the administrator credited to E. D. Dyer ; that the officer did not remove the hogsheads and coal which he attached, but kept them locked up in the distil-house, of which the officer held the key, and that they were subsequently seized and sold by other officers, for the creditors of the plaintiffs. He further testified, that the intestate, in one instance certainly, and perhaps in two or three instances, had given his notes to the plaintiffs, to be by them disposed of to raise money.

The judge ruled, that if the testimony was believed, it was a good defence.

The plaintiffs then introduced evidence to show, that the note in suit was indorsed by them and sold immediately after its date, for a valuable consideration, to J. S. & W. C. Tyler, who were still the holders of it, and that the action was commenced and prosecuted by them and for their benefit in the name of the plaintiffs.

The plaintiffs contended, that if this evidence was believed by the jury, and if the Tylers had no knowledge or notice of any of the matters which had been testified to by Shelton, until after the commencement of the action, the Tylers might maintain the action in the plaintiffs' name.

But the judge ruled, that even if the Tylers had purchased the note immediately after its date, and had it indorsed and transferred to them for a valuable consideration, without notice of any thing that would impair its validity, and in the belief that it was fairly given for a valuable consideration, still the action could not be maintained, if the testimony of Shelton was believed.

The plaintiffs thereupon submitted to a nonsuit, which was to be set aside, if the ruling of the judge were in any respect erroneous, and the action to stand for trial.

*Sprague and Gray*, for the plaintiffs, to the point, that the bill of sale was a good consideration for the note, and that it was not competent for the defendant to avoid the note by showing that it was fraudulent, cited *Jenkins* v. *Brewster*, 14 Mass. R. 291 ; *Lyon* v. *Summers*, 7 Connect. R. 399 ; *Sickman* v. *Lapsley*, 13 Serg. & Rawle, 224 ; *Wright* v. *Wright*, 2 Littell, 8 ; *Montefiori* v. *Montefiori*, 1 W. Bl. 363 ; *Polhill* v. *Walter*, 3 Barn. & Adolph. 114 ; *Findley* v. *Cooley*, 1 Indiana R. 262 ; *Telford* v. *Adams*, 6 Watts, 429.

*E. Blake*, for the defendant, to the point, that Shelton was a competent witness, cited 1 Stark. Ev. 103 ; Clancy on Husband and Wife, 251, 267, 271, 347, 351 ; to the point, that the note in suit being without consideration and not negotiable, the same defence could be made against those who sue in the name of the plaintiffs, as if the plaintiffs were suing for their own benefit, *Parish* v. *Stone*, 14 Pick. 201 ; *Bliss* v. *Negus*, 8 Mass. R. 46 ; *Hill* v. *Buckminster*, 5 Pick. 393 ; *Tucker* v. *Smith*, 4 Greenl. 415 ; *Thompson* v. *Hale*, 6

Dyer
v.
Homer.

*April 2d*

Dyer
v.
Homer.

Pick. 262 ; *Ayer* v. *Hutchins,* 4 Mass. R. 372 ; *Thurston* v. *M'Kown,* 6 Mass. R. 428 ; Bayley on Bills, (Phil. and Sewall's 2d edit.) 544 ; *Chamberlain* v. *Gorham,* 20 Johns. R. 144 ; *Sylvester* v. *Crapo,* 15 Pick. 93 ; and to the point, that the fraud vitiated the whole contract, the note as well as the bill of sale, *Munt* v. *Stokes,* 4 T. R. 561 ; *Roby* v. *West,* 4 N. Hamp. R. 285 ; Chitty on Contr. 222.

*April 6th.*

MORTON J. delivered the opinion of the Court. The note, not being negotiable, is entitled to none of the privileges or advantages due to mercantile securities. These constitute, to some extent, a circulating medium, and their unembarrassed circulation is so important to commercial prosperity, that the law looks upon them with great favor, and where they are not absolutely void, will always enforce them in the hands of a *bonâ fide* indorsee. But this is a common chose in action, which, in law, is never assignable. It may however be transferred, and the assignment vests in the assignee an equitable interest, which the law recognizes, and, as far as consistent with its own rules, protects and enforces. An assignment of a chose in action, by necessary implication, carries with it an irrevocable authority to use the name of the assignor, to reduce it to possession. But the assignee gains no right and acquires no advantage which did not belong to the assignor, at the time of the assignment. As the note must be sued in the name of the promisee, so the equitable interest of the assignee can give him no rights or privileges not possessed by the promisee, nor deprive the promisor of any legal objections to the validity of the note or of any grounds of defence which existed while it was in the hands of the assignor. The plaintiffs must sustain their action, upon the same principles, by the same proof, and subject to the same defence, as if it never had been assigned, *Jenkins* v. *Brewster,* 14 Mass. R. 291 ; *Chamberlain* v. *Gorham,* 20 Johns. R. 144 ; *Nesmith* v. *Washington Bank,* 6 Pick. 324 ; *Sylvester* v. *Crapo,* 15 Pick. 92 ; *Ayer* v. *Hutchins.* 4 Mass. R. 370.

In defence, the defendant's counsel states, and the evidence offered by him shows, the following facts. The consideration of the note was the sale of certain chattels, by the promisees to the promiser. There was no delivery of the chattels, but

they always remained in the possession of the sellers. The sale was made for the express purpose of preventing the creditors of the owners from attaching the property ; and nothing was ever paid for it except by this note. The defendant contends that these facts show a total want of consideration, and constitute a valid defence. Upon this statement, the sale was unquestionably fraudulent, and might have been avoided by the creditors by seizing the property for their debts. But whether as between the parties there was a want of consideration, which the defendant may set up to defeat his own note, is a different question, and one which we are now to examine.

It is scarcely necessary to mention, that a want or a failure of consideration, reduces a note to a *nudum pactum*, and destroys its legal obligation. If a security be given for the price of property sold, and the property prove to be of no value, or the purchaser, by the informality of the sale or for want of title in the seller, fail to become the owner, it is such a defect of consideration as will avoid the security. *Bliss v. Negus,* 8 Mass. R. 46 ; *Hill v. Buckminster,* 5 Pick. 393 ; *Parish v. Stone,* 14 Pick. 199.

But the omission of a formal delivery, as between the parties to the bill of sale, is not of itself such a defect as will defeat a promise to pay. It may be the neglect of the vendee and not the fault of the vendor, which the former may remedy at any moment by taking possession. The contract of sale is valid. And unless the vendor refuse to deliver the property sold, the vendee cannot resist a promise which he has given for the price. We now can see no valid objection, which the plaintiffs could make, to the delivery of the goods sold, if they are in existence, should the defendant demand them. Long on Sales, 75 ; Bull. N. P. 258 ; *Hawes v. Leader,* Cro. Jac. 270 ; *S. C* Yelv. 196 ; *Steel v. Brown,* 1 Taunt. 381.

The stress of the objection is, that as this sale was merely colorable, the vendee acquired no property by it and so received no consideration for his promise. But we think this is not a correct view of the transaction. Although the sale was invalid as to creditors, and might have been avoided by them, yet as between the parties, it must be deemed fair and obligatory. No man can be allowed to defeat his own contract, by

alleging his own turpitude.    The principles of estoppel should apply, in such a case, with all their stringency.    Every contract is presumed to be made in good faith, and though it may always be impeached by showing fraud in others, yet never by showing it in ourselves.    The object of the law is to discourage and prevent collusive conveyances of property, to the injury of honest creditors ; and the more effectually to accomplish this object, it will always refuse to relieve a man from the consequences of his own fraudulent acts.

The statutes of the 13th and 27th of *Elizabeth,* are the foundation of our doctrine of fraudulent conveyances.    And whether they are in affirmance of the ancient common law or not, their principles have long been adopted here and have, both in England and America, been a text upon this subject prolific of commentary.·  They expressly declare fraudulent sales and conveyances to be " utterly void, frustrate and of none effect," " *only* as against creditors ;" plainly implying, that between the parties they are valid and operative.    Long on Sales, 75 ; *Hawes* v. *Loader,* Yelv. 197 ; *Twyne's case,* 3 Coke, 81 ; *Osborne* v. *Moss,* 7 Johns. R. 161 ; *Drinkwater* v. *Drinkwater,* 4 Mass. R. 357.

It is also further argued, that the whole transaction being fraudulent, the note as well as the sale is tainted, and that the law will not lend its aid to enforce either.    It is true, that the law will not exert its power to execute fraudulent contracts, or to relieve from their effects when executed.    But we have already shown, that the parties to this contract of sale may not show its collusive character, and therefore, as between them, it is not to be regarded either as fraudulent or invalid.    If the sale is operative, surely the note for the price should not be set aside.

The case of *Tucker* v. *Smith,* 4 Greenl. 415, is relied upon to support this argument, and certainly appears to countenance it.    We do not yield a very cordial assent to some of the doctrines contained in that case ; but have no occasion to controvert them, as they do not stand in the way of our decision.    The two cases are clearly and widely distinguishable. The note in that case was wholly without consideration ; but here we have seen, that it was supported by a sale of property

which, between the parties, was valid and never was questioned by anybody else.   Whether it was right then to allow the defendant to show his own turpitude, in giving a note without consideration, for the purposes of fraud and imposition, we are not called upon to determine.

As the facts sworn to by Shelton can avail the defendant nothing, it is unnecessary to inquire whether he was a competent witness or not.

*Nonsuit taken off and new trial ordered.*

The action was again tried before *Wilde* J.

To show a failure of the consideration for the note, the defendant read by consent the report of the judge at the former trial, in consequence of the absence of Shelton ; and it was agreed that his testimony, as stated in that report, should be evidence at this trial.

The plaintiffs, by consent, read as evidence that part of the report of the former trial, which relates to the transfer of the note to Messrs. Tyler, and contended as before, that these assignees were entitled to recover, in the plaintiffs' name, the amount of the note ; but the judge instructed the jury, that notwithstanding the transfer for a valuable consideration, without notice, any defence which would have been good against the Dyers, if no transfer of the note had been made, would still be good in this action.

It was contended by the plaintiffs, that the evidence, if believed, did not constitute a defence against any part of the note ; but the judge instructed the jury, that if, pursuant to the original agreement between Dyer and Homer, the property was retained by Dyer, and consumed and sold by him, or taken and sold on the executions in favor of his creditors, then there was a failure of consideration, which the defendant was at liberty to set up and which was a good defence.

It was contended by the defendant, that the transaction as to the horse could not be deemed a ratification of the sale, and that the administrator of the intestate could not be considered as having taken the horse under the bill of sale ; but the judge ruled, that the administrator had no right to receive it, except under the bill of sale, and instructed the jury that there was no failure of consideration as to the horse

Dyer
*v.*
Homer,

·A verdict was found for the plaintiffs for fifty dollars. If the instructions were in any respect erroneous, a new trial was to be granted.

The points raised on this second trial were argued at March term, 1840.

*March 30th,*
*1840..*

SHAW C. J. delivered the opinion of the Court. In a former stage of this case it was determined, that the note in suit was not necessarily void, as being without consideration; because, although voidable by the creditors, the contract of sale was good between the parties; and the vendee, although he left the vendors in possession, which was bad as against creditors, might at any time have taken possession and held the goods against the vendors.

On a new trial it appears, that the defendant did take possession of a small part of the property, and the jury were instructed to find that the note was good to that extent; and as to the rest, if the property was attached by the plaintiffs' creditors, or taken and used up by the plaintiffs themselves, the consideration to that extent failed, and the plaintiff was not entitled to recover.

But the plaintiffs now insist, that they have a right to recover for the whole amount, and that the defendant ought not to be allowed to set up a failure of consideration arising from permitting the debtors to take the property in fraud of their creditors.

The true distinction, we think, is, that the sale is valid to all purposes, except as against creditors and purchasers, who alone can avoid it by attaching the property. Hence the note is good in the hands of the vendors until the contract is rescinded by the parties themselves, or avoided by the creditors, by the attachment of the specific goods.

Such a transaction is not regarded as *turpis causa*, which renders all contracts void. This very note was good in the hands of the plaintiffs originally, as made on good consideration; and would have remained good, if not rescinded and avoided by matter subsequent. This distinguishes it from the case in Connecticut, where there was a conspiracy to cheat, in the original concoction of the note, and it was used and intended to be used for the purpose of fraud.

The case rests upon the broad ground, that the consideration has failed, and that the assignee stands in the same situation as the promisee, the note not being a negotiable security *Chamberlain* v. *Gorham*, 20 Johns. R. 144.

In the case of *Bailey* v. *Foster*, 9 Pick. 139, where a promissory note had been given by the vendee, upon a conveyance of property made to defraud creditors, and that conveyance had been avoided and defeated by creditors, who had a right to avoid it, by attaching the goods, it was held that the vendee might set up this fact as a defence to the note, if it remained in the hands of the original payee and had not been negotiated to an indorsee without notice. This is directly in point to show, that in this case, if the whole of the goods had been attached by the creditors of the Dyers, it would have been a defence to this note if sued by the Dyers, and as it was a note not negotiable, and could not be taken by an indorsee, the de fence is equally good, although the note has been assigned. For reasons given in the former opinion, we think the assignees stand upon the rights, and claim the interests of the promisees.

Then the only question is, whether, if the conveyance has been defeated in part only by the attachments of those creditors who had a right to defeat and avoid it, the note may be avoided *pro tanto* ; and we are of opinion that it may, where a note not negotiable is given for the purchase money ; without intending to express any opinion upon the question how this would be, upon a negotiable note negotiated after due, and with notice or otherwise.

And we think the same consideration applies to that part of the property which the original vendors used and which never came to the possession of the defendant's intestate. As between the parties, between whom be it remembered the conveyance was not fraudulent, the using up of the property must be taken to be a rescinding of the contract, *pro tanto*, by mutual consent, and to the same amount a reduction of the note.

We think the case is distinguishable from the cases of 4 Greenleaf, 415, and 7 Connect. R. 399, in this respect, that in those cases the notes were made for the purpose of enabling the promisee to hold out a false appearance of contract when there was no real contract ; whereas here was a contract good

and valid as between the parties.    The note being payable to the vendors only and not to order, was not a security which any one by law could take, otherwise than as taking a right to recover the same amount that the assignors had a right to recover, at the time of the assignment.

In regard to the testimony of Philo S. Shelton, the Court are of opinion, that the question is properly open on this report.    As the report of his testimony at the first trial was read by consent, it ought to be subject to the objection formerly made to his competency but not decided.

It appears that the defendant's intestate died before his father, who thereupon became his sole heir at law, and whose estate therefore is interested in this suit.    Benjamin P. Homer gave a certain proportion of his property to trustees, for the use and benefit of his daughter, who is the witness's wife.    But the whole of that property is so given to trustees to the sole use of the wife, during coverture.    It may therefore never come to the use or possession of the witness ; and whatever the probability may be, that the income may come to his use, it does not necessarily and by operation of law, and then as a pecuniary interest, it is contingent and does not operate to render the witness incompetent.