## Sherk *against* Endress.

A contract, which is fraudulent as to creditors, by reason of the Statute of 13 Elizabeth, is binding upon the parties themselves, and the one may use it against the other for any purpose whatever.

ERROR to the Common Pleas of *Lebanon* county.

John Endress, assignee of Michael Spang, against the administrators of Samuel Sherk, deceased.

This was an action of debt upon a bond conditioned for the payment of $1900, and a sealed note for the payment of $1000.

The defendants pleaded specially, that before the date of the assignment of the bond and note by Spang to Endress, Spang was indebted to Sherk, by judgment, for $6000; by bond for $1000; and by a sealed note for $400. The plaintiff replied specially to these pleas, that the said judgment, bond, and note were given and obtained for the purpose of delaying, hindering, and defrauding the creditors of Michael Spang, and were without consideration. The defendants demurred to the replication. The court overruled the demurrer, and gave judgment for the plaintiff.

*L. Kline* and *Pearson*, for plaintiffs in error, argued that although the contract was fraudulent and void as to creditors, it was binding upon the parties to it. 13 *Serg. & Rawle* 224.

*G. Kline* and *Weidman*, for defendant in error. The demurrer admits the facts set forth in the plaintiffs' replication that the contract was without consideration and fraudulent, and therefore could not be made available to defeat the plaintiffs' recovery.

The opinion of the Court was delivered by

Gibson, C. J.—Only one point in this long assignment of errors is worthy of particular consideration; but it is a fatal one. The effect of the bond and judgment pleaded as a set-off, and explained by the agreement which accompanied it to be in trust for particular persons, was to delay the general creditors, and it was undoubtedly fraudulent in regard to them; but it was binding and perfectly fair between the parties to it. Such is the fundamental principle of the 13 Elizabeth, which was enacted to protect creditors, and which, when these are not seeking the benefit of it, leaves the contract as it was at the common law. Now the judge who tried the cause was of opinion that the common law leaves the contract in force between the parties only, by protecting them

reciprocally from evidence of the fraud; but that when one of them sets it up himself, or the fact inadvertently comes out in the pleadings, the contract becomes void between the parties for purposes of offence or defence, either for the fraud meditated against the statute, or for original want of consideration by the common law.

But the statute does not operate in a contest betwixt the actors themselves, on what it declares to be fraud only in its relation to third persons; for in any other aspect there is no fraud whatever, and it is unimportant whether the contract is used to found a claim betwixt the parties to it, or to rebut one; it is free from taint in regard to *them*, and the one may use it against the other for·any purpose whatever. The reason why a contract void against creditors may be set up against either of the parties to it, is not because he shall not be allowed to defeat it by showing his own criminality, but because there is no criminality to be shown. It is a trite remark that though a contract within the purview of the statute is no contract at all against the interests *intended to be* defrauded, yet it is a contract in respect to everything else; and it consequently must have all the effect of one betwixt the parties to it. The fraud which is declared to be so by the statute, is legal and not actual; but the principle I have indicated arises from no provision of the statue; for a contract infected with actual fraud against a third person not a creditor, is by the policy· of the law enforceable even in equity between those who intended to perpetrate the act.

If the bond and judgment then are not void by the statute, why should they be void independently of it? A valuable consideration is doubtless essential to a conveyance of land to trustees for payment of debts, who happen *not* to be creditors, because a con-. sideration is necessary to raise a use; neither would the destination of the property to payment of debts, be alone sufficient to support an actionable promise, because it would neither be a benefit nor a prejudice to either of the parties. These considerations are independent of the statute of Elizabeth, for the first springs from the statute of uses, and the second from the common law, as may be seen in *Roberts on Fraudulent Conveyances* 429, and *Twelves* v. *Williams*, (3 *Whart.* 492). It is true that in a contest with creditors, want of consideration for a conveyance or assignment has been held conclusive evidence of fraud; but here we have no such contest, and consequently nothing to do with the statute. It is admitted that the bond and judgment would be collusive by its terms if brought within the sphere of its action; but between the parties to the transaction, who are also the parties to the present suit, the question would be, were not the obligee himself a creditor, what effect has want of consideration by the common law, in regard to a bond or a judgment? Certainly none to destroy the conclusiveness of the seal, or of the recovery. A

[Sherk v. Endress.]

voluntary bond, as this was, is, both in equity and at law, a gift of the money; and who ever heard of a judgment, unsatisfied and unreversed, being void for want of consideration? When the money secured by this transaction is recovered, the defendant may be compelled to distribute it among the persons entitled to it by the agreement. He is a trustee for the benefit of himself and others, and is not bound to advance the money in the first instance to entitle him to receive it in the second.

If this cause should be put before another jury, I hope it will be on the general issue instead of the present mass of insensible pleadings which presents no resulting issues. The Act of Assembly directs set-off to be given in evidence under the plea of payment; yet here there were four special pleas in bar, and six replications, though the statute does not allow a plaintiff to reply double; all this, too, without a joinder in issue on any one fact or circumstance in the cause. But that is not all. At the trial, the plaintiff went on, under notice of special matter, to make out his case on original grounds, and the defendant to make out his set-off, as if nothing had been admitted, or as if the controversy had not been narrowed to any particular point. What is the value of special pleading if it be thrown aside at the trial, as it was here? Or what is it in any case? It certainly tends, when regularly conducted and followed up, to shorten the trial by disposing of all but the contested facts beforehand; but it is doubtful whether this advantage is not more than balanced by the risk, which there is, even in the hands of the most skilful, of being entrapped into admissions prejudicial to the justice of the cause. With us, where there is not a class of the profession to prepare the pleadings, and where a competent share of skill in that branch of the business is seldom found, special pleading is attended with all the risk incident to it elsewhere, without its correspondent despatch. Policy would seem to require that it be abolished in all cases; and that the general issue, with notice of special matter, be substituted for it, as less cumbrous and better suited to the habits of the bar.

Judgment reversed, and a *venire de novo* awarded.