## SPRINGER *v.* DROSCH.

CONTRACT.—*To Defraud Creditors.*—A contract for the sale or conveyance of property, to hinder or delay creditors, is illegal as to creditors only. As between the parties, and as to all others than creditors, it is legal and valid, and can be enforced in all its terms as any other contract. *Welby* v. *Armstrong*, 21 Ind. 489, overruled.

EVIDENCE.—*Admissions.*—On the trial of an action for goods sold and delivered, the defendant offered in evidence an execution and return of the sheriff, and a schedule of property attached thereto, verified by the plaintiff, in the case of a third person against the plaintiff, of a date subsequent to said alleged sale to the defendant, this claim not being included in the list. *Held,* that, as an admission of the plaintiff, this was proper evidence.

APPEAL from the Howard Circuit Court.

RAY, J.—Complaint by appellant for goods sold and delivered, accounts and claims transferred, and services performed, claiming judgment for ten thousand dollars.

The fourth paragraph of the answer, to which a demurrer was sustained, upon which ruling error is assigned, is as follows: "The defendant avers that at the time of the said sales mentioned in said complaint, the plaintiff was indebted to divers persons in the sum of twelve thousand dollars; and for the purpose of hindering, delaying, and defrauding his creditors, said plaintiff, on his part, made said sales to the defendant."

This paragraph, it is insisted, constituted a good defense to the action, and we are cited to the case of *Moseley* v. *Moseley*, 15 N. Y. 334, in which the earlier case of *Nellis* v. *Clark*, 4 Hill, 424, is approved, where it was said to have been held, that "in an action on a promissory note, brought by one not entitled to be treated as a *bona fide* holder, the maker may defend on the ground that the note was given in consideration of land sold for the purpose of defrauding creditors; and this, though he was himself a party to the fraud." What was actually ruled in the case cannot very clearly be determined. Chancellor WALWORTH, in his opinion, announced the rule as stated, but voted for a reversal, on the ground that the doctrine was not applicable to the

case before the court.  Ruger, senator, voted also for reversal, but on the ground, that "the language of the statute is clear and unequivocal, that sales or assignments made with intent to hinder, delay, or defraud creditors, are void, only 'as against the persons so hindered, delayed, or defrauded;' and it has been held that such sales are to be regarded as binding upon the immediate parties thereto, their heirs, and personal representatives.  *Jackson* v. *Garnsey*, 16 Johns. 189; *Osborn* v. *Moss*, 7 Johns. 161.  If this be so, the distinction taken by the Supreme Court between executory and executed contracts can have no application here."

It appears, then, that two members of the court voted for the reversal of the case, the one affirming that the contract was good between the parties, and the other denying this proposition.  The case was affirmed, the Chancellor and eight senators voting for reversal, and ten senators for affirmance, and thus, by a majority of one, the State Senate of New York, its members learned and unlearned in legal lore, attempted to reverse the law as declared by the courts from the time of James I.; and to this decision, with no citation of other authority to support it, we are referred by the Court of Appeals of that State, and informed that the law "should now be regarded as established."

Entertaining all proper respect for the decisions of that court, we are nevertheless reluctant to admit that the long line of rulings in England and in the courts of our sister states is to be thus lightly obliterated.

In the case to which our attention is thus called, the learned Chancellor devotes much space to prove that the facts in the special cases, where a doctrine adverse to the one he was contending for was announced, did not require so broad a rule as therein stated; but that the facts of each case would have been covered by a ruling, that where the contract was executed, equity would regard it as valid.  In the channel which the Chancellor had endeavored to discover, and through which he hoped to reach his haven, after avoiding, to his own satisfaction at least, many of the

barriers to his progress, placed by other courts in older times, he meets a decision which crosses the passage, and he frankly admits, to quote his own language, that "the case of *Findley* v. *Cooley*, 1 Blackf. 262, decided by Judge BLACKFORD and his associates, in our sister State of Indiana, does, however, directly decide the question, that in the case of an executory contract made to defraud creditors, the defendant cannot set up the fraud as a defense to a suit brought thereon by a *particeps criminis.* It is evident, however, that the distinguished judge who delivered the opinion of the court in that case did not examine the question with his usual care and discrimination. For he lost sight of the distinction which exists between an executed and an executory contract tainted with fraud or other illegality. And he seems to take it for granted that if the defendant could not himself avoid the fraudulent conveyance which he had received, he was bound to pay the consideration of that conveyance to the fraudulent grantor, or those who were suing for his benefit."

To the members of the legal profession in this State, the charge that Judge BLACKFORD erred for the want of due examination and care, will require to be substantiated by higher proof than the assertion of a judge who rests his opinion alone upon the case of *Smith* v. *Hubbs*, 1 Fairf. 71, where the judge who delivered the opinion admitted his inability to distinguish between a contract void in law and one which was in itself legal, though the motive which prompted the contract, being fraudulent as to certain persons, they were permitted, and they alone, to avail themselves of that fraudulent intent and set aside a contract legal otherwise. In fact, no distinction was detected by that court between a wager, or gambling contract, and one for the sale of property where the intent to defraud a creditor existed. And yet it does not seem difficult to distinguish that in the one case the contract is, in itself, void in law, and in the other it is legal as a contract. It is illegal to wager. It is not illegal to sell property. If there be an

intent to defraud a particular person, or class of persons, as to that person, or class of persons, the sale would be void; but as to all others, the fraud would be without injury to them, and of such a fraud they could not avail themselves. As it was ruled by the Supreme Court of Massachusetts, the transaction is not illegal. The most that can be urged against it is, that it is voidable by creditors. But it is valid between the parties and is binding as to every one except he be a creditor. *Fairbanks* v. *Blackington*, 9 Pick. 93.

Indeed, the very careful consideration of the authorities in the case of *Findley* v. *Cooley*, *supra*, shows that at common law conveyances of this class were never considered void, except as to the creditors defrauded thereby.

But it is unfortunate that while directly charging the court of this State with want of " care and discrimination," the accomplished critic should have cited the case from the Maine Reports decided in 1833, when that court, almost two years before the writing of his censure, had held, in the case of *Nichols* v. *Patten*, 18 Me. 231, that " a conveyance of chattels fraudulent and void as to creditors of the vendor, is still binding upon the parties to it; they cannot set up the fraud upon creditors, as against each other; the doctrine *in pari delicto* does not there apply; and the vendee, losing his title to the property by the acts of the vendor, may recover its value against him."

Clearly, this was giving the active aid and assistance of the court in enforcing the terms of the contract, and directly in conflict with the ruling the Chancellor was attempting to sustain, alone upon the authority of the Supreme Court of Maine.

But there were two cases which might well have been cited as sustaining the ruling in *Nellis* v. *Clark*, *supra*—the case of *Mason* v. *Baker*, 1 Marsh. 208, and that of *Norris* v. *Norris*, 9 Dana, 317, where it is held, that the statute declaring conveyances to defraud creditors " shall be void only as to such creditors," leaves the parties still, as between

themselves only, to stand on the ground of the common law, assuming that at common law such a contract could not be enforced. This conclusion is fully answered by Judge BLACKFORD, in the case already cited from our own reports: "By the common law, and by the Statutes Edw. III. and Hen. VII., as well as by the Statute 13 Eliz., conveyances to defraud creditors are not absolutely void. They have always been considered binding on the parties. Whether the Statute 13 Eliz., ch. 5, is merely declaratory of the common law, or an extension of its operation, is rather an unsettled question. That it is only a recognition of the common law, is the opinion of Lord COKE. Co. Litt. 290 *b.* The same opinion is expressed by Lord MANSFIELD, Cowp. 434; by Chief Justice MARSHALL, 1 Cranch, 316; and by Chief Justice KENT, 9 Johns. 339. The contrary doctrine is laid down in *Twyne's Case,* 3 Co. 80, and in *Upton* v. *Basset,* Cro. Eliz. 445. In the two last cited cases it is said, that, by the common law, no person should avoid an estate made by fraud, except him who had a former right, interest, or demand; whereas, the Statute of Eliz., instead of being limited to former interests, extends to those whose debts arise subsequently to the fraudulent alienation. The case before us does not require an opinion on this litigated question. We barely refer to some of the authorities to remind the counsel for the defendant that if the Statute of Eliz. does not authorize his client to treat as void this conveyance to which he is a party, which was admitted on the argument, his appeal to the principles of the common law is beyond the possibility of success. There is not a dictum anywhere for his position, that the English statute is in derogation of the common law. On the contrary, it is either declaratory of the common law, or an enlargement of its principles."

The authority in New York and Kentucky, while in the face of the plain intent of their own statutes, finds no support in the principles of the common law. Nor are they sustained by a single authority within our knowledge.

In this State the rulings are uniform. *Findley* v. *Cooley,*

*supra; Scott* v. *Purcell,* 7 Blackf. 66; *Laney* v. *Laney,* 2 Ind. 196; S. C., 4 *Id.* 149; if we except the case of *Welby* v. *Armstrong,* 21 Ind. 489, which while professing to follow the case of *Findley* v. *Cooley, supra,* announces a doctrine in conflict therewith. This case containing within itself the correction of its error, we regard it as only necessary to overrule it without further comment.

The English authorities all proceeded upon this rule. *Hawes* v. *Leader,* 4 Cro. Jac. 270; S. C., Yelv. 196; *Jones* v. *Yates,* 9 B. & C. 532; *Besser* v. *Windham,* 6 Q. B. 166.

In this country this ruling has been almost unbroken. *Drinkwater* v. *Drinkwater,* 4 Mass. 354; *Taylor* v. *Weld,* 5 Mass. 109; *Reichart* v. *Castator,* 5 Binn. 109; *Gillespie* v. *Gillespie,* 2 Bibb, 89; *Dale* v. *Harrison,* 4 Bibb, 65; *Clapp* v. *Tirrell,* 20 Pick. 247; *Dyer* v. *Homer,* 22 Pick. 253, where it was held that a note given for such a consideration could be enforced; *Sherk* v. *Endress,* 3 Watts & S. 255, where it was ruled, that such a contract could be enforced by either party against the other in all its terms and for any purpose; *Randall* v. *Phillips,* 3 Mason, 378; *Byrd* v. *Curlin,* 1 Humph. 466; *Thompson* v. *Moore,* 36 Me. 47; *Eyrick* v. *Hetrick,* 13 Penn. St. 488; *Burgett* v. *Burgett,* 1 Ohio, 469; *Worth* v. *Northam,* 4 Ired. 102; *Hendricks* v. *Mount,* 2 South. 738; *Robinson* v. *Monjoy,* 2 Halst. 173; *Sumner* v. *Murphy,* 2 Hill (S. Car.), 488; *Chapin* v. *Pease,* 10 Conn. 69; *Dearman* v. *Radcliffe,* 5 Ala. 192; *McGuire* v. *Miller,* 15 Id. 394.

*Neely* v. *Wood,* 10 Yerg. 486, is cited in a note to *Phillpotts* v. *Phillpotts,* 10 C. B. 84, but as the volume is not in our library, being out of print, we have not examined it. We have also omitted the earlier New York cases, as controlled by the later rulings.

Such an array of authority, however, should satisfy any one that this question is, indeed, at rest, and that the defense attempted in this case cannot avail the defendant— that a contract for the sale or conveyance of property, to hinder or delay creditors, is only illegal as to creditors; and

that as between the parties, and as to all others, it is a legal and valid sale or conveyance, and can be enforced in all its terms as any other contract.

On the trial, the defendant offered to introduce in evidence an execution and return of the sheriff, and also a schedule of property attached thereto, verified by the plaintiff, in the case of Keifer and others against the plaintiff. This was offered as an admission made by Drosch, this claim not being included in the list, that at a date subsequent to the alleged sale to the defendant, no such cause of action existed. The evidence was refused. This was error. It was evidence tending to disprove the cause of action, and was proper for the consideration of the jury.

For this error in excluding the evidence offered, the case is reversed and remanded for a new trial. Costs for appellant.

*J. W. Cooper, N. Purdum*, and *M. Bell*, for appellant.

*D. C. Metsker, H. A. Brouse, J. W. Gordon*, and *W. March*, for appellee.