A. F. DAVIS ET AL. V. A. F. SITTIG

(Case No. 2179)

1. PROMISSORY NOTE—ILLEGAL CONSIDERATION—ASSIGNMENT WITHOUT ENDORSEMENT—
   SUCH ASSIGNEE TAKES SUBJECT TO ALL DEFENSES AGAINST ORIGINAL PAYEE—NOTICE
   —ESTOPPEL — FRAUD ON CREDITORS — MAKER OF NOTE MAY PLEAD FRAUD,
   THOUGH A PARTICIPANT—October 23, 1877, L., being largely indebted to one
   Walthew and divers other persons, and being insolvent, made to B., with in-
   tent to defraud his creditors, a pretended sale and conveyance of his entire
   interest in his deceased parents' estates, which were then being administered
   in the probate court of Galveston county by B., the executor. This interest
   was the only property or property rights possessed by L. At the same time
   B., who was fully apprised of L.'s purpose, in pursuance of an agreement be-
   tween them, and in order to give the transaction the appearance of a *bona fide*
   sale, executed to L. his promissory note for $5,000, payable January 1, 1883,
   bearing eight per cent. interest, and expressing as its consideration a transfer
   of L.'s interest in his deceased parents' estates. The deed from L. to B. re-
   cited the note, and was duly recorded in the records of deeds of Galveston
   county. It was distinctly understood, at the time, between L. and B. that no
   property was to pass by the conveyance; that the note was never to be en-
   forced against B., and that D. was to incur no liability by reason of its execu-
   tion. In 1882 the estates were partitioned amongst L. and the other legatees,
   and, shortly thereafter, the portion allotted to L., consisting of realty, was sold

under execution, to satisfy Walthew's claim, which had been reduced to judgment, Walthew becoming the purchaser. This property, which proved insufficient to satisfy Walthew's claim, was subsequently adjudged to him by decree of the district court. The note was in form negotiable, but was never endorsed. On May 25, 1880, L. having, in the meantime, lost the note, transferred and assigned his interest therein, by a separate writing, to his brother, who, in like manner, transferred the lost note to S., for value. L.'s brother is not shown to have paid value for the transfer to him. In a suit by S. against the legal representatives of B., then deceased, for the amount of the note and interest. *Held* ·

(1) That the note, under the foregoing facts, became the property of S., subject to all the defenses which B. or his legal representatives could have urged against it had it still been in the hands of L., the payee, and that S. stood charged with notice of the facts which attended its execution. (Citing Daniel on Neg. Insts., 741; Trust Co. *v.* National Bank, 101 U. S. 71; Allum *v.* Perry, 68 Me., 232; Bank *v.* Taylor, 100 Mass. 22; Foreman *v.* Beckwith, 73 Ind. 517; Beard *v.* Bedolph, 29 Wis. 132; Matteson *v.* Morris, 40 Mich. 55, and other authorities);

(2) That the fact that B. knew of L.'s fraudulent purpose in conveying to him, and was a participant in the fraud, did not estop him or his legal representatives from setting up the fraudulent transaction as a defense to the note.

2. CONTRACTS—FRAUDULENT CONVEYANCES—ARTICLE 2465, REVISED STATUTES—The fact that article 2465, Revised Statutes, declaratory of the illegality of conveyances made to defraud creditors, only declares such contracts void as to creditors, does not strip such a transaction of its fraudulent character, or give to it standing as a valid contract which the courts will enforce.

3. CONTRACTS—ILLEGAL—EXECUTORY—PUBLIC POLICY—No action arises, either at law or in equity, from an illegal contract. If it has been voluntarily performed, a court of equity will not, in the absence of controlling motives of public policy, grant its aid by decreeing a recovery back of the money paid or the property delivered; but as long as the contract is executory, it cannot be enforced in any action brought directly upon it. And this is so, for reasons of public policy, and not from regard for the interest of either party to such a contract.

4. SAME—The fact that an illegal contract may have been executed by one party, furnishes no reason why the other should be compelled to execute his part of it, remaining executory. (Citing McCansland *v.* Ralston, 12 Nev. 195; Briggs *v.* Merrill, 58 Barb. 399; Nellis *v.* Clark, 4 Hill 428; s. c., 20 Wend. 24; Norris *v.* Norris, 9 Dana 318; Harvin *v.* Weeks, 11 Rich. 601; Ager *v.* Duncan, 50 Cal. 337; and other authorities.)

5. CASES REVIEWED—The cases of Carpenter *v.* McClure, 39 Vt. 9; Davis *v.* Mitchell, 34 Cal. 81; Dyer *v.* Horner, 39 Mass. 260· Sherk *v.* Endress, 3 W. & S. 255; Springer *v.* Drosch, 32 Ind. 486, reviewed.

ERROR from Galveston. Tried below before the Hon. W. H. Stewart.

The court, to whom the cause on the trial thereof was submitted without a jury, rendered judgment in favor of the plaintiff for the amount of the note and interest, less certain sums advanced the payee by the executor. The defendants excepted, and have brought the case to this court by writ of error.

The trial court's conclusions of law, which form a part of the record, are as follows:

1. A negotiable note, when lost before endorsement and never found, although it be afterwards transferred before its maturity, is, in the hands of the transferee, subject to every defense which the maker could urge against the payee; so that the $1,000 advanced by Davis, the maker, to Lewis, the payee, entitles the defendants in this case to a credit of the $1,000 against the lost note; and, by reason of the fact that before the plaintiff acquired the right to the lost note, the title to the property, of the value of $2,000, the consideration of the note has failed, by reason of the property having been sold to pay Lewis' debt, the defendants are entitled to an additional credit of the $2,000, which two credits amount to $3,000.

2. Bevin R. Davis, having given the note and received the deed, in confederation with Lewis, to hinder and delay the creditor, Walthew, and other creditors of Lewis, is estopped to set up such fraudulent intent to defeat the enforcement of the collection of the balance due on the note, which I find, together with the interest thereon, less the credits, to be $3,175, for which I hold that the plaintiff is entitled to his judgments as heretofore rendered on March 9, 1885."

The syllabus states the facts.

*C. L. Cleveland* and *Ballinger, Mott & Terry*, for plaintiffs in error, on the proposition that the court erred in its conclusions of law, to the effect that Bevin R. Davis, having given the note and received the deed, in confederation with Lewis, to hinder and delay the creditors of Lewis, is estopped to set up such fraudulent intent to defeat the enforcement of the balance due on the note, cited: 1 Story Eq. Jur., secs. 378, 379; 2 Pothier on Obligations, 5; Bigelow on Fraud, 342; Kerr on Fraud, 214; 1 Addison on Cont., sec. 264; 2 Chitty on Cont., 11 Am. ed. 1050; 1 Parsons on Notes and Bills, 216; Willis & Bro. *v.* Morris, 63 Tex. 458; Gilmour *v.* Thompson, 49 Howard Pr. 198; Feldman *v.* Gamble, 26 N. J. Eq. 494; Harvey *v.* Hunt, 119 Mass. 283; Winn *v.* Thomas, 55 N. H. 294; s. c. 14 Am. Law Reg. N. S. 702; Lawrence *v.* Clark, 36 N.Y. 128; Howe *v.* Litchfield, 3 Allen 443.

That the secret agreement between Alfred N. Lewis and Bevin R. Davis, at the time of the execution of the note and the deed of assignment, in pursuance of their fraudulent intent, was illegal, and Davis could have pleaded such fraudulent agreement as against Alfred N. Lewis, they being *in pari delicto*, they cited: 1 Daniel on Neg. Insts., sec. 194; Bigelow on Fraud, 343; 1 Story Eq., sec. 379; Kerr on Fraud, 374; 7 Wait's Acts. and Def., p. 66, sec. 2, p. 69, sec.

5; 4 Ib., p. 280, sec. 7; Willis & Bro. v. Morris, 63 Tex. 458; Howe v. Litchfield, 3 Allen 443; Solinger v. Earle, 45 N.Y. 80, 604; Dougherty v. Savage, 28 Conn. 248.

That the note having been assigned without endorsement, the holder was in no better position than the original payee, they cited: Story on Prom. Notes, sec. 120; 1 Daniel on Neg. Insts., sec. 741; 2 Parsons on Notes and Bills, 46.

*E. P. Turner*, for defendant in error, on the question of estoppel, and that a conveyance, though fraudulent and void as to creditors, is, nevertheless, binding as between the parties, cited: 3 Wait's Acts. and Def., 469, 478; Fowler v. Stoneum, 11 Tex. 478; Epperson v. Young, 8 Tex. 135; O'Neal v. Chandler, 42 Ind. 471; Springer v. Drosch, 32 Ind. 486, and cases cited; Starke v. Littlepage, 4 Rand. (Va.) 368; Shaw v. Millsaps, 50 Miss. 380; Anderson v. Bradford, 5 J. J. Marsh (Ky.) 69; Woodman v. Bodfish, 25 Me. 317; Kerr on Fraud, 373, *et seq.*

That a promissory note given for property transferred with intent to hinder and delay creditors, though void as to such creditors, is valid as between maker and payee, he cited: 1 Daniel on Neg. Insts., 142, sec. 194; Hoeser v. Kraeka, 29 Tex. 452; Lewis v. Castleman, 27 Tex. 417; Carpenter v. McClure, 39 Vt. 13; Dyer v. Horner, 22 Pick. 253; Sherk v. Endress, 3 W. & S. 255; Stanton v. Green, 34 Miss. 582.

STAYTON, ASSOCIATE JUSTICE.—The findings of fact by the judge who tried this cause show that the lost note sued upon was executed by B. R. Davis to Alfred N. Lewis, in consideration of property conveyed by the latter to the former with intent to defraud his creditors, and that this intent was known to all parties. They further show that Alfred N. Lewis, after the note was lost, but before its maturity, transferred his interest therein to Charles A. Lewis, who is not shown to have paid value therefor, and that he, after the maturity of the lost note, transferred it to the appellee.

The court below properly held that, under the existing facts, the note was subject to any defense which could have been urged against it in the hands of the person to whom it was originally made payable. The note was negotiable in form, but was not transferred by endorsement, as is necessary to pass the legal title to such paper. It was not in the possession of the party to whom it was made payable, nor is it shown that the person to whom it was assigned before maturity ever paid value for it.

It is well settled that, under such facts, it came into the ownership

of the plaintiff subject to all defenses which the maker of it could urge against it, were it yet in the hands of Alfred N. Lewis, and that he stands charged with notice of the facts which attended its execution. Daniel on Neg. Insts., 741; Trust Co. v. National Bank, 101 U. S. 71; Allum v. Perry, 68 Me. 232; Bank v. Taylor, 100 Mass. 22; Foreman v. Beckwith, 73 Ind. 517; Beard v. Bedolph, 29 Wis. 142; Matteson v. Morris, 40 Mich. 55; Simpson v. Hall, 47 Conn. 417; Terry v. Allis, 16 Wis. 504; Boeka v. Nuella, 28 Mo. 180; Haskell v. Mitchell, 53 Me. 468; Hedges v. Sealy, 9 Barb. 214; Bissell v. Gowdy, 31 Conn. 49; Barlow v. Scott, 12 Ia. 65.

Such being the position of the plaintiffs, the court below held that those who represent the maker cannot now assert the illegality of the transaction. That as to them the note is to be deemed a valid instrument, and subject only to such defenses as could be urged against such an instrument in the hands of one holding only the equitable title thereto.

There are cases which hold that the maker of a note, given for the purchase money of property, which he knew the payee conveyed to him for the purpose of defrauding his creditors, cannot set up the fraudulent character of the transaction as a defense to the note. Amongst them are Carpenter v. McClure, 39 Vt. 9; Davis v. Mitchell, 34 Cal. 81; Dyer v. Horner, 39 Mass. 260; Sherk v. Endress, 3 W. & S. 255; Springer v. Drosch, 32 Ind. 486.

These decisions do not recognize any difference between contracts executed and executory, and are based on the language of the statutes declaratory of the illegality of conveyances made to defraud creditors, which, in most of the states, as here, only declare such contracts void as to creditors. Such statutory declaration does not, however, strip such a transaction of its fraudulent character, or give to it standing as a valid contract, which the courts will enforce.

"The proposition is universal that no action arises, in equity or at law, from an illegal contract; no suit can be maintained for its specific performance. or to recover the property agreed to be sold or delivered, or the money agreed to be paid, or damages for its violation." Pomeroy Eq., 940.

As between the parties to such a contract, who are in equal fault, no right exists which a court of justice will enforce.

" If the contract has been voluntarily executed and performed, a court of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of the money paid or the property delivered, or a cancellation of the conveyance or transfer. As long as the contract is executory,

it cannot be enforced in any kind of an action brought directly upon it. The illegality constitutes an absolute defense." Pomeroy Eq., 940.

And this is so for reasons of public policy, and not from regard for the interest of either party to such a contract. That the contract may have been executed by one party, furnishes no reason why the other should be compelled to execute his part of it yet remaining executory. McCausland v. Ralston, 12 Nev. 195; Briggs v. Merrill, 58 Barb. 399, Nellis v. Clark, 4 Hill 428; s. c. 20, Wend. 24; Norris v. Norris, 9 Dana 318; Harvin v. Weeks, 11 Rich. 601; Harwood v. Knapper, 50 Mo. 456; Ager v. Duncan, 50 Cal. 327; Hamilton v. Scull, 25 Mo. 165; Walton v. Lusten, 49 Miss. 576; McClenny v. Floyd, 10 Tex. 166.

Under the findings of fact, and the first conclusion of law reached by the court below, the judgment should have been for the defendants. The judgment will be reversed and here rendered—that the plaintiff take nothing, that the defendants go hence without day and recover of the plaintiff all costs incurred in this court and in the court below. It is so ordered.

REVERSED AND RENDERED.

[Opinion delivered February 16, 1886.]

[Chief Justice Willie did not sit in this cause.]