WILLIAM CUNNINGHAM v. J. H. HOLCOMB.

No. 34.

**Fraud—Party to may Recover when not in Pari Delicto—Fact Case.**—Where plaintiff's agent conspired with defendant to defraud a third person, and the transaction, which involved a sale of plaintiff's lands to defendant and the taking of defendant's notes therefor, also operated as a fraud on plaintiff, the fact that plaintiff in an effort afterward to protect himself may have in some respects ratified the fraudulent transaction, did not preclude him from relief on the vendor's lien notes against the defendant, who held the property of plaintiff without having paid for it.

ERROR from Eastland. Tried below before L. W. CAMPBELL, Esq., Special Judge.

*R. B. Truly* and *J. S. Straughan*, for plaintiff in error·— 1. Fraud avoids all contracts. Stacy v. Ross, 27 Texas, 3; Crayton v. Munger, 9 Texas, 285; 7 Wait's Act. and Def., 69, Bump. on Fraud. Con., 447, 448; Willis v. Morris, 63 Texas, 463.

2. The principal can not avail himself of the fraudulent acts of his agent, made to the injury, or intended injury, of any third person. Wright v. Calhoun, 19 Texas, 412; Calhoun v. Wright, 23 Texas, 522; Henderson v. Railway, 17 Texas, 560; Mech. on Agency, secs. 148, 151.

3. Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interpose to relieve either of those persons as against the other from the consequences of his own misconduct. Willis v. Morris, 63 Texas, 463; Bolt v. Rogers, 3 Paige, 153; 1 Story Eq. Jur., sec. 298; 1 Pome. Eq., 401, 437; Bump. on Fraud. Con., 454, 455.

*J. H. Calhoun*, for defendant in error, cited Mech. on Agency, sec. 797; Bump. on Fraud. Con., 3 ed., 448, 449; 7 Wait's Act. and Def., sec. 6; 1 Pome. Eq., sec. 403; McKelvain v. Allen, 58 Texas, 383; Lundy v. Pierson, 67 Texas, 233.

STEPHENS, Associate Justice.—William Cunningham prosecutes this writ of error from a judgment rendered by the District Court of Eastland County against him and others in favor of J. H. Holcomb, defendant in error, in the month of December, 1887, on the promissory note of said Cunningham, foreclosing the vendor's lien on a tract of land situated in Eastland County. The case was tried without a jury.

In the month of May, 1884, J. S. Bedford, who was the son-in-law of defendant in error, under a power of attorney authorizing him to convey two certain tracts of land owned by defendant in error in Eastland County, conveyed to plaintiff in error the tract of land upon which the lien was foreclosed by the judgment of the court below. The deed recited a cash consideration of $1400, and three certain negotiable promissory notes of $1666.66 each, payable in one, two, and three years, one of which notes was the foundation of this suit. This deed was executed on the 24th of May, 1884, and recorded the 1st day of July following. No lien was expressly retained in the face of the deed, but the notes recited that they were secured by a lien on the land. About the 12th day of July he conveyed the other tract of land to the same party, the deed reciting a cash consideration of $1200, and three notes for $2600 each, payable in three, four, and five years, to secure the payment of which a lien was expressly reserved in the face of the deed. The proof tended to show, that these two tracts of land did not exceed in value $8000; that these deeds were executed between said Bedford and Cunningham for some fraudulent purpose; that there was no cash paid; that Holcomb was ignorant of the

recitals in said deed and of any fraudulent purpose on the part of said Bedford and Cunningham; that Cunningham was totally insolvent and without credit; that Holcomb, who lived on his farm in Erath County, was worth about $40,000 above his exemptions and liabilities. At the date of this transaction one Jake Alexander was engaged in the mercantile business in the town of Cisco, claiming to have an investment therein of about $20,000, over and above his debts and liabilities. The proof tended to show, that the purpose in the execution of said deeds, and especially the last deed, was to negotiate the notes with Holcomb's endorsements to Alexander for an interest in his mercantile business, which was afterward done; and in consideration of which he conveyed to Bedford a one-half interest therein. The notes, with the endorsement of Holcomb, were delivered to him, but as they exceeded in amount the estimated value of a half-interest in said mercantile business, Alexander and Bedford executed to Holcomb their note for the difference, in the sum of $2200. The proof tended to show, that when these notes were negotiated, and the transaction which resulted in the purchase of an interest in the said business was accomplished, said Holcomb was in very feeble health and in a state of mind bordering very close on to imbecility, and that he continued in this condition for sometime afterward—to use his own language, that he was " not at himself;" and that when he did come to himself (which was after the notes had been negotiated by Alexander), he discov ered that the transaction between Bedford and Cunningham was fraudu lent, and took steps to protect himself from loss on account of the endorsement of said notes. About this time it was developed that Alexander, the merchant, was in a failing condition, and that he owed to one Solomon a debt of over $20,000, to whom said notes had been negotiated by him. It also appears, that after Solomon was notified that Holcomb would resist payment of the notes, a deed of trust was executed upon the stock of goods to secure this debt, and that at a meeting of these several parties, with their attorneys, an arrangement was made, to-wit, in the month of October, 1884, by which the stock of goods should be sold under the deed of trust and bid in by Holcomb at about $18,000, and upon his paying this sum and assuming liens on real estate in the sum of $10,000 additional, his notes should be returned to him, which transaction was consummated; and the loss sustained by Holcomb was estimated at about $10,000. Prior to this last transaction, and after the goods were delivered under the trust deed, Bedford and Cunningham quitted the county of Eastland, where they had been residing, and remained absent from the country up to the time of the trial, nothing being heard from either of them, except that perhaps one of them was in South America. Cunningham, through an attorney who appeared for him, alleged these transactions and charged that they were fraudulent, and that Holcomb, through his agent, had assisted in accomplishing them, and had ratified the act of

his alleged agent by endorsing said notes and by purchasing said stock of goods and by bringing this suit upon one of these notes.

We think the facts in the record warrant the following conclusions: first, that Bedford and Cunningham entered into a conspiracy to defraud Holcomb, and perhaps others, and that the deeds were executed in pursuance of said fraudulent conspiracy; second, that Holcomb did not knowingly and freely assent thereto; third, that his conduct, upon discovering the fraud, was not intended as a ratification of the same, but was influenced by a prudential desire to protect himself from the consequences of the fraud. While other conclusions might be drawn from the evidence, we think the testimony is sufficient to support the above theories.

The principle invoked by the plaintiff in error for a reversal of the judgment of the court below, that where parties have voluntarily entered into a fraudulent contract, neither one will be permitted to become an actor in court, whether to enforce or set aside the contract, seems to be well settled. It is held in this State that even an assignee of a note executed in pursuance of such a contract can not maintain an action thereon where the same has been transferred to him without value paid. Davis v. Sittig, 65 Texas, 497. We are of opinion, however, that this principle is not applicable here. Our construction of the transactions disclosed in the record is that Holcomb was " more sinned against than sinning." It seems to be held (as we think correctly), that where a third person conspires with an agent to perpetrate a fraud upon the principal, and the rights of innocent third parties have not intervened, the principal is entitled to have a rescission of the contract made between his agent and such third party; or, if he elects not to have it rescinded, to have such other adequate relief as a court of equity may deem proper under the circumstances. Mech. on Agency, sec. 797. It seems, also, to be laid down, that before a person connected with a fraudulent transaction will be refused a day in court, it must appear that he yielded a free and unbiased consent thereto; and that, in some cases, the most excusable of the parties engaged will be relieved. Bump. on Fraud. Con., 449; Pome. Eq., sec. 403, and notes.

Our conclusion is, that the trial court would not have been justified, on the ground of public policy, in refusing the relief sought to be applied, and that the facts warranted the judgment rendered; it is therefore affirmed.

*Affirmed.*

Delivered November 15, 1892.