### IN THE

# HIGH COURT OF ERRORS AND APPEALS

### FOR THE

# STATE OF MISSISSIPPI.

---

## APRIL TERM, 1854.

### WILLIAM B. HOOVER *v.* C. AND L. PIERCE.

Where A. sued B. upon a promissory note, the consideration of which was certain negroes sold to B. as merchandise, contrary to the constitution of the State, and a count was included in the same declaration for the hire of certain negroes, and also one for money had and received to the use of A., arising from the sale of the same negroes; they having been sold by B. at an enhanced price: — *Held*, that the note given for the slaves, being in contravention of the 7th art. 2d sect. of the constitution of the State, it is voidable; and as a general rule, a party cannot recover money which has been paid upon an illegal consideration.

Where two parties agree in violating the laws, a court will not entertain the claim of either party against the other for the fruits of such an illegal bargain.

In such a case, no distinction, founded on principle, exists between money, chattels, or land paid upon an illegal consideration; and courts will not lend their aid to a party who has parted with his property on an illegal considera-

tion, to regain possession of it. *Held*, that A. not being entitled to invoke the aid of a court to recover back the slaves, he cannot maintain an action to recover the proceeds of the sale.

Courts of original ·jurisdiction, in the trial of causes before them, are clothed with discretionary authority which it is difficult to define and limit to any general rule; but as a general rule, after the evidence in a case has been closed, additional testimony should not be introduced by either party; but it rests with the courts, in the exercise of a sound discretion, to determine whether a particular case does not warrant a departure from this rule.

THIS was an action of assumpsit on a promissory note. The declaration contained two other counts; one for the hire of certain slaves, and the other for money had and received by defendants to plaintiff's use on the sale of the same slaves. The defence attempted to be set up was the illegality of the consideration, the note having been alleged to have been given for slaves introduced into this State as merchandise and for sale, since 1st May, 1833.

Plaintiff proved by the testimony of Billingslea and Nash, under the second and third counts, that defendants acquired possession of the slaves from the plaintiff, worked them during the year 1835, and then sold them and received payment.

Defendants, to prove the fact of their illegal introduction and sale, filed a bill of discovery, in which it is alleged that the negroes were brought into this State as merchandise and for sale, which the plaintiff admits in his answer. After the evidence was closed on both sides, and after the commencement of the argument on the instructions, and on the following day, defendants asked leave to be permitted to prove the fact of the introduction of the negroes since 1st May, 1833, to which plaintiff objected; but the witness was permitted to testify, and stated that he lived in South Carolina in 1833, in the same neighborhood with plaintiff, and that he came to this State in the ——, and plaintiff came shortly afterward, in ——, with slaves, and this, he thinks, was the first trip plaintiff made.

*W. R.* and *A. P. Hill* for appellant.

Granting that no error was committed by the court in permitting the additional testimony to be offered at that stage of

Hoover *v.* Pierce.

the trial, still it is insisted that the verdict of the jury under the first count on the note, was not warranted by the evidence. It was admitted by the answer to the bill of discovery, that the negroes, constituting the consideration of the note, were introduced as merchandise, but the date of their introduction is not given, and to supply this hiatus, a witness was introduced who proved that he formerly lived in South Carolina, in the same neighborhood with the plaintiff; that witness left that State and removed here in the spring of 1833, and plaintiff came out that fall with negroes, and he thinks that this was the first trip plaintiff made to this State with negroes for sale.

Now, it may be that the jury found according to the preponderance of the testimony on that point, if the note be left out of view. But the note having been executed and in evidence, the presumption of law was that the note was founded on a valid consideration; the legal presumption was in favor of the *bona fides* of the transaction, and the defendant's case was not made out by throwing doubt and suspicion on the transaction, but it was incumbent on him to overthrow and negative this legal presumption in favor of the validity of the consideration and its *bona fides*.

Its illegality must be established, and the *onus* is thrown on the defendant. See Story on Bills, sect. 193, 194; Chitty on Bills, 277 to 284.

It is contended that plaintiff is entitled to recover, and the remarks submitted will be confined to the count for money had and received, though equally applicable in principle to both.

So far as the adjudications of our courts are concerned, the question involved in this case is an original one, and still undecided. None of the cases have determined what right the original owner of slaves illegally introduced into this State has, after the avoidance of the contract of sale.

What is the condition of such slaves, possession being still retained by the original vendor? Where is the title? The slaves must either be free, or the title must be in the vendor or vendee; it cannot be *in nubibus*. It cannot be that they are emancipated. This is prohibited by statute; and there is nothing in the constitutional prohibition or the laws of the State to show that

their illegal introduction works a forfeiture of the title.   The nineteenth section of the bill of rights even goes so far as to declare that no conviction for any offence shall work a forfeiture of estate ; the old system of forfeiture is totally foreign to the genius of our constitution.   Can the title be in the vendee ? How ?   In virtue of the contract of sale ?   That has been avoided, and it must be absurd to say that he holds title under a contract which he has set aside, or retains rights under a sale which has been annulled.   The conclusion is irresistible that the title is in the vendor, and of this opinion was Chancellor Buckner in *Martin* v. *Broadus*, 1 Freem. Ch. R. 38.   If the contract in such case is void, it would seem to follow, as a clear consequence, that the title to the negroes at least remains in the seller.

The case would stand, so far as any rights were acquired or parted with under it, as though the contract had never been made.

If the legal title to the slaves, in such case, be in the vendor, it would seem clearly to follow, that he has the right to redress, if it be assailed, for the law knows no such absurdity as that of recognizing a right without affording a remedy to enforce it ; and if the vendor have the title to the negroes, the law will protect him in the enjoyment of it, and afford him redress against all who invade it.   A contrary doctrine would throw the property of the illegal trader wholly beyond the pale of the law, and like waifs, his negroes might be appropriated by the first person who seized them.   One might even go to his camp, forcibly seize his slaves, carry them off, sell them, and pocket the money, and yet be harmless.   A doctrine which justifies and tolerates such outrages is wholly indefensible.   It will not admit of a doubt that if one were tortiously to take such slaves from the illegal trader and dispose of them, the latter could maintain trover or trespass ; and it is scarcely less certain that he could also maintain trover against a purchaser after the contract of sale had been set aside, who still retained possession of the slaves, and refused to deliver them up, or who had sold them after the avoidance of the contract ; such sale being in itself an act of conversion.

Hoover *v.* Pierce.

The act of illegal introduction vitiates a contract. of sale by the trader, but does not affect his right of property in the slaves.

If trover or trespass could be maintained for the tortious taking and sale under the circumstances stated, then assumpsit can be maintained in the same case, for it is a familiar principle, that a plaintiff may, in such case, waive the tort, and proceed in assumpsit for the value of the property or the amount of the sale. Where the defendant has tortiously taken the plaintiff's property and sold it, or being lawfully possessed of it, has wrongfully sold it, the owner may ordinarily waive the tort, and recover the proceeds of the sale under the count for money had and received. Greenl. Ev. § 120, citing 5 Pick. 286; 10 Pick. 161.

The foregoing reasoning, it is believed, has established these propositions : —

1st. That after a contract for the sale of negroes has been declared void on the ground of their illegal introduction into this State, they still remaining with the purchaser, the legal title is in the vendor.

2d. That, in such case, the vendor has the legal right to redress for any invasion of his right of property, and may maintain trover or trespass for a tortious taking and sale of his slaves.

3d. That he may waive the tort, and recover the proceeds of the sale on the count for money had and received.

No distinction in principle exists between this case and that of a tortious taking and sale by defendants. The contract of sale was either absolutely void or merely avoidable.

If void *ab initio*, it conferred no title on the vendee, and the title remained in the vendor. If, however, the contract was merely voidable (and perhaps this is the better opinion), subject to be rendered void by either party when required to execute it, the result is still the same. For the defendants, by their plea and defence, avoid the contract, rendering that void which was before only voidable; and the title to the slaves which, during the continuance of the contract, had been in the vendor, whenever that contract is avoided, is, by operation of law, divested, and revests in the plaintiff; the revesting bearing relation back

2 *

to the time when the original contract was made.   And this is
a familiar principle of law.   Thus, when an action is brought
by a vendee on a breach of warranty of soundness of a slave,
(where he seeks an entire rescission of the contract,) and the
plaintiff obtains damages to the full amount of the considera-
tion, the title to the slave revests in the vendor by operation of
law, on the ground that the contract has been rescinded.   And
if the subject of the action be a female slave, who meanwhile
has had issue, the title to the issue would, in like manner, be
vested in the defendant (the vendor), on the principle that the
rescission of the contract of sale abrogated all rights under it,
and had relation back to its formation.

It is needless to inquire into the effect of this reasoning on
the sale made by the defendants; that is not now the question.
The purchaser there has since acquired title by possession, and
if he had not, the bringing of this action by the plaintiff to
recover the purchase-money would be an affirmance of his title.
The possession of the defendants was too short to confer title,
even admitting that it could be acquired by them under the cir-
cumstances.   According to the views here presented, the case
stands thus:  The defendants have sold the property of the
plaintiff without his consent, and received payment.

The test, whether a demand connected with an illegal con-
tract can be enforced at law is, whether the plaintiff requires
any aid from the illegal transaction to establish his case.   Paley
on Agency, 61, 100; 11 Wheat. 258.

Tried by this test, the plaintiff may recover on the count for
money had and received.   He requires no aid from the illegal
act to make out his case.   The defendants avail themselves of
the illegal act as a defence to the note, and in doing so prove, in
part, the plaintiff's case on the common counts, by showing
that he had certain slaves in his possession, *primâ facie* they
were his property, and that defendants afterwards sold the same
slaves and received payment.   A case is thus proved on this
count without any " aid " from the illegal transaction, the intro-
duction and sale to the defendants.

In relation to illegal contracts, the ground on which the court
proceed is, that whenever the illegality is brought to the view

Hoover v. Pierce.

of the court, it refuses to aid its enforcement, leaving the parties just where it found them. In the application of this rule, it is seen that the court below did refuse to enforce the original contract in which the note was founded. That was illegal, and void.

The cause of action, however, in the count for money had and received, is totally distinct from that, and unconnected with the illegal introduction and first sale. The offence was complete and past, — the slaves had thereafter become mixed up with the other property of the State, and were the subjects of lawful contracts. The right to recover on this count is founded on a new and independent consideration, without any taint of the original transaction.

If the promise be unconnected with the illegal act and is founded on a new consideration, it is not tainted by the act, and a recovery may be had. 11 Wheat. 258.

The case of *Wooten* v. *Miller*, 7 S. & M. 385, was relied on as authority conclusive against the plaintiff's right to recover. In that case, the plaintiff employed the defendant as his agent to introduce and sell negroes in this State, the introduction at the time being illegal. The defendant did sell and receive the money, and it was held that the plaintiff could not recover it from him.

There is a palpable distinction between that case and this. In that, there was an agreement between the parties to violate the laws of the State; the sale of the negroes from which accrued the money sought to be recovered, was palpably illegal, and the money itself the fruit of an illegal sale. To enforce its collection would be to give efficacy directly to an illegal transaction. Not so in the case at bar. To make the cases analogous, the defendants here should have been employed as the plaintiff's agents to make the sale. There would be some analogy between the cases, if there had been no subsequent sale by defendants, and plaintiff was now trying to make the money by indirection under the common counts, for the first sale. But this is not the fact; the money here sought is the fruit of a legal sale, the sale by defendants to a third party. For it will not be contended that the sale by the defendants was so affected by

the first illegal act of introduction, which had so impressed itself on the negroes as to vitiate all subsequent contracts in relation to them.   The count for money had and received, which in its spirit and objects has been likened to a bill in equity, may in general be proved by any legal evidence, showing that the defendant has received or obtained money which, in equity and good conscience, he ought to pay over to the plaintiff.   Greenl. on Ev. § 117; 24 Miss. R. 691.

It requires no argument to show that defendants come within this rule here laid down.   They purchased the plaintiff's negroes, and refused to pay for them ; afterwards sold them and pocketed the proceeds, and now refuse to pay over the money received on the subsequent sale.   And it is clear from the testimony, that this subsequent sale brought more money than the defendants agreed to give for them.

*Lawson* for appellee.

The note sued on was given for negroes introduced into this State after our constitutional prohibition in May, 1833.   Such contract being against public policy, is void.   *Glidewell* v. *Hill*, 5 How. R. 110 ;  *Cowen* v. *Boyce*, Ib. 769 ;  *Brien* v. *Williamson*, 7 Ib. 14 ;  *Collins* v. *McCargo*, 6 S. & M. 128 ;  *Wooten* v. *Miller*, 7 S. & M. 385.

It may be insisted, that inasmuch as the defendants sold the slaves for a greater amount than they agreed to pay to the plaintiff, that he may recover on the count for money had and received to his use by the defendants on a resale.

This cannot be supported unless the defendants sold the plaintiff's negroes.   And perhaps not even then, for it would be allowing the plaintiff to accomplish indirectly what the law prohibits : the sale of his negroes by an agent.   7 S. & M. 385.

When the plaintiff sold the negroes on a credit to the defendants, as between them the title passed to the defendants, and the plaintiff had no longer any right to the thing sold, but only to the price agreed to be paid.   As to what amounts to a valid sale of personal property, see *Ingersoll* v. *Kendall*, 13 S. & M. 614.

Although the plaintiff may not be able to recover the amount

Hoover *v.* Pierce.

agreed to be paid for the chattel, still that does not change the title to the thing sold. There is no evidence in the record that defendants sold plaintiff's negroes.

There is a preliminary question, as to whether the court erred in permitting testimony to go to the jury after the parties had announced the testimony closed. It is certainly a matter of discretion; and for matters of discretion, this court will not reverse. The plaintiff was not prevented from proving any thing in rebuttal of the testimony thus introduced. He was not taken by surprise. He knew the defence. The defendants had notified him thereof by their petition for discovery, which he answered.

Mr. Chief Justice SMITH delivered the opinion of the court.

This was an action of assumpsit upon a promissory note. In addition to the count on the note, the declaration contained counts for the hire of certain slaves, and for money had and received to the use of the plaintiff, arising from the sale of the same slaves. A verdict and judgment were rendered for the defendants, and the case is brought before us on the bill of exceptions taken to various decisions of the circuit judge during the progress of the trial. There was no motion made for a new trial in the circuit court; we are hence relieved from the duty of passing upon the question raised in the argument at bar, whether or not the verdict was sustained by the evidence.

After the evidence was closed, and the cause was put before the jury, the defendants were permitted to introduce a witness, who was examined as to facts supposed to be material to the defence. The plaintiff excepted, and this action of the court is now urged as a ground for reversing the judgment.

Courts of original jurisdiction, in the conducting of trials before them, from necessity, are clothed with a discretionary authority which it is difficult to define and limit by any general rule. After the evidence in a cause has been closed, additional witnesses should not be introduced by either party. This is the general rule which these courts have found it expedient to adopt. But it rests with them, in the exercise of a sound discretion, to determine whether the facts and circumstances of

Hoover v. Pierce.

a particular case do not warrant a departure from it. Hence an appellate court will not interfere with the exercise of this discretion, unless in an extreme case, where the injustice caused by a departure from this rule is manifest and great. Doubtless, in the case before us, the court, in permitting the introduction of the witness, deemed it necessary for the furtherance of justice; and it does not appear to us that great or manifest injustice was done to the plaintiff.

The defence was based on the alleged illegality in the consideration of the note declared on. It was shown by the evidence that the note was given for the sum remaining due on a protested bill of exchange, which was drawn in payment of slaves brought into this State as merchandise, and sold by the plaintiff to the defendants. A question was raised, whether by the evidence it was sufficiently proved that the slaves were introduced since the first of May, 1833. But if that fact was proved, it was conceded that no recovery could be had upon the note.

It was in proof that, some time after the slaves were sold by the plaintiff to the defendants, the latter sold them for a sum greater than the price which they had agreed to pay for them. And it is now contended, that, admitting the contract of sale to be illegal and void, and the consequent invalidity of the note, the plaintiff is entitled to recover, under the common counts, the proceeds of the sale of the slaves made by the defendants, and hire for the time which they had them in possession.

In support of this position, it is said, that as the contract of sale was absolutely void, it neither divested the title of the plaintiff, nor conferred any title or interest upon the defendants, either to the slaves themselves, or the proceeds of their labor; hence that the parties stood as if there had been no attempt to sell or purchase. That the sale made by the defendants was a wrongful act,—was a trespass upon the plaintiff, which he might waive, affirm the sale, and recover the proceeds, upon the implied equitable assumpsit of the defendants.

It is very manifest, that if, in the sale made by the defendants, they acted, or could be considered to act, as the agents of the plaintiff, or if there was any privity between the parties,

a recovery could not be had.   It would be violative of a prin-
ciple of universal application, which declares no one shall be
permitted to reap the fruits of an illegal transaction.   But this
view of the subject is repudiated.   The position is attempted
to be sustained solely on the assumption, that the sale was an
act of trespass upon the rights of the plaintiff, who, by means
of the attempted sale, which was absolutely void, was in no-
wise divested of his title to the slaves.

Where one has, by an act of trespass, possessed himself of
the personal chattels of another, and has sold them, and re-
ceived the proceeds of the sale, the injured party may waive his
remedy on the *tort*, affirm the sale, and recover the proceeds
of the sale in an action of assumpsit.   But we apprehend that
no case can be put, where a party thus circumstanced, could
maintain an action for the proceeds, even against the trespasser,
unless he could also maintain detinue against him for the
chattels themselves.   Let us test the right of the plaintiff to
recover the proceeds of the sale by the application of this rule.
It is obvious that our remarks will apply with equal pertinency
to the count for the hire of the slaves.

Could the plaintiff have maintained detinue against the
defendants for the slaves, upon the alleged ground that the
contract of sale was void?

It has been definitively settled by this court that all obliga-
tions and contracts made to secure the price of slaves brought
into this State and sold in violation of the second section of
the seventh article of the constitution, in regard to slaves, may
be avoided upon the plea of the defendant.   But whilst this
doctrine is held by the court, it will not lend its aid to a party
who seeks to recover back money which has been, in fact, paid
upon an illegal consideration, upon the maxim, that *in pari
delicto potior est conditio defendentis.*   The only exception to
this rule recognized by the English decisions exists in that class
of cases in which one of the parties has, by an illegal act, taken
advantage of and oppressed the other.   The exception, and the
reason upon which it is founded, is clearly stated by Lord
Mansfield, in *Browning* v. *Morris*, Cowper, R. 790.   His lordship
said, that where certain acts are made unlawful by statute, in

order to protect unwary and ignorant people from oppression and extortion, then, although both parties are guilty of violating the law, yet they are not equally guilty; and that in such cases, the party from whom the money has been exacted, shall recover it back from the party who practised the oppression. The cases put in illustration of the rule are, where, under an usurious contract, a party has received a greater amount of interest than is allowed by the statute, and where a bankrupt has paid money to his creditor as the consideration for signing his certificate. In these cases the parties from whom the money is exacted are entitled to recover it back. And although they have been guilty of a violation of the law, they are not regarded as equally guilty with the party who, taking advantage of their necessitous condition, has extorted money from them. But it is now unquestionably settled in England and in this country, that where a party has paid money upon an illegal contract, he cannot maintain an action to recover it back where he is really *in pari delicto.* We are not apprised of any decision in this court where the distinction taken in the courts of England has been recognized. The case before us does not require an adjudication upon the point, and we will not decide it in advance.

The defendants who purchased the slaves illegally brought into the State, and the plaintiffs who introduced them, are equally guilty of violating the law. Hence, upon the principle above laid down, it is very evident that the former could not maintain an action for money had and received against the plaintiffs, to recover back the money paid on their contract for the purchase of the slaves. It was money paid on an illegal contract. The same doctrine which would require us to refuse our assistance to the plaintiff, to recover the unpaid purchase-money, would forbid. our giving aid to the defendant if he sought to recover back that part of it which has been paid. The same principle would apply if other slaves had been transferred, or land had been conveyed in payment. The parties would not have a right to enter upon the land and avoid the conveyance, or to annul the contract and recover back the slaves, upon the ground of the illegality of the consideration for the transfer or

Hoover v. Pierce.

the conveyance. If the defendants could not recover in the cases we have put by way of illustration, it follows necessarily that the plaintiff could not maintain an action to recover back the slaves, which were sold and conveyed in violation of the law. The decision in the case of *The Inhabitants of Worcester* v. *Eaton*, 11 Mass. R. 368, is directly in point. The very lucid and able exposition of the law, applicable to the case under consideration, contained in the opinion of Chief Justice Parker, entitles it to the highest consideration. In that case, the tenant defended under a conveyance from Fisk and Hudson, who had received a conveyance from the grantor of the demandants. The deed to Fisk and Hudson was executed and delivered prior to that of the demandants. The conveyance to Fisk and Hudson was founded on an immoral and illegal consideration. The question was, whether a deed given upon such a consideration, was absolutely void, or whether it could be avoided by the entry of the grantor, so that a subsequent conveyance made by her, *bona fide* and for a valuable consideration, would pass the estate.

In delivering the opinion of the court, the chief justice said: " It appears to be the settled law in England, and we are satisfied that it is also the law here, that where two parties agree in violating the laws of the land, the court will not entertain the claim of either party against the other for the fruits of such an unlawful bargain. If one hold the promise or obligation of the other, to pay him money, or to do any other valuable act on account of such illegal transaction, the party defendant may expose the nature of the transaction to the court, and the law will say, ' Our forms and rules are established to protect the innocent and to vindicate the injured, not to aid offenders in the execution of their unjust projects;' and if the party who has foolishly paid his money, repents his folly, and brings an action to recover it back, the same law will say to him: ' You have paid the price of your wickedness, and you must not have the aid of the law, to rid you of an inconvenience which is a suitable punishment of your offence.'

" If, then, the composition of a felony or a larceny is an illegal consideration of any promise or obligation to pay money, the

party claiming under such instrument cannot enforce it in a court of justice; nor can the other party, if he has paid it, recover it back again.  There must, then, be a distinction between land and money paid on such a consideration, or Betsey Flagg could not on this ground avoid her deed to Fisk and .Hudson by entry or action, so as to convey a title to the demandant.  Such a distinction was attempted in argument, but we find no foundation for it.  A deed of bargain and sale, signed, sealed, delivered, acknowledged, and recorded, is an .actual transfer of the land to the grantee, as much as the delivery over of a sum of money or of a personal chattel, is a transfer of either of those."

We concur with the court in that case, that no distinction, founded on principle, exists between money and chattels, or land, paid upon an illegal consideration.  And whether contracts for the transfer of personal property, or the conveyance of land be absolutely void or not, courts will not lend their aid to a party who has parted with his property on an illegal consideration to regain possession of it.  If, then, the plaintiff was not entitled to invoke the aid of a court to recover back the slaves, it is clear that he could maintain no action to recover the proceeds of the sale.  It would, in effect, be permitting the party to recover upon an implied contract, where he could not have prevailed if the contract had been express.

Let the judgment be affirmed.