[No. 826.]

JOHN McCAUSLAND, Appellant, v. A. J. RALSTON, Administrator of the estate of T. F. Smith, deceased, Respondent.

Amendments of Pleadings—Discretion of Court.—A party wishing to amend his pleading ought, as a general rule, to ask leave of the court to amend when objections to the sufficiency of the pleadings are made, and before the introduction of testimony; but courts in allowing amendments are necessarily clothed with discretionary power, and whenever an offer is made to amend at any such stage of the proceedings, that the opposite party will not lose an opportunity to fairly present his case; it cannot be said that the court has abused its discretion in allowing an amendment.

Statute of Frauds—Promissory note—Hindering, delaying and defrauding Creditors.—In a suit, brought against the administrator of a deceased person, to recover the amount due upon a promissory note, the defendant should be allowed to allege and prove that the note was made and delivered to plaintiff without consideration, for the sole purpose of protecting the property of the deceased from his creditors, and that it was agreed between plaintiff and said deceased at the time of the execution of said note that it should be canceled whenever so desired.

Idem—Illegal Contracts.—Courts will not aid either party in enforcing an illegal *executory* contract; nor if executed will they aid either party in setting it aside, or in recovering back what has been passed under it. Whenever an executory contract is tainted with fraud, the courts refuse to enforce it, and it makes no difference whether the fraud is shown by plaintiff or defendant.

Idem—Payments, how Credited.—Where plaintiff held several promissory notes against the deceased, all but one being valid, and also held certain shares of mining stock belonging to deceased: *Held*, that, in the absence of any showing to the effect that the deceased ever authorized plaintiff to appropriate the proceeds derived from the sale of such stock toward the dis-

charge of the fraudulent note, the law compelled plaintiff to credit the money upon the valid notes.

Refreshing Memory of a Witness.—Where a witness testifies that he has no way of fixing dates except by referring to a book of original entries made by himself, and further testifies that the entries were made at the time of the occurrence, and that the dates were correct: *Held*, that he should be allowed to examine the book for the purpose of refreshing his memory, and should be allowed to testify to the dates. Such testimony is not hearsay.

Tender—Costs.—After the commencement of the trial the defendant tendered to plaintiff an amount of money largely in excess of the amount recovered by him: *Held*, that defendant is entitled to recover all costs that accrued after the tender was made, and all other costs relating specially to the fraudulent note.

Appeal from the District Court of the First Judicial District, Storey County.

The facts sufficiently appear in the opinion of the court.

*Lewis & Deal,* for Appellant:

I. The evidence of fraud in the execution of the note was inadmissible, because the note, although void as to creditors, was perfectly good as between the parties. The statute of this state does not make such an instrument absolutely void; but only so as to creditors. (1 Comp. L. secs. 297, 298, 299, 300.) When the statute expressly declares that such instrument as against the persons, hindered, delayed, or defrauded, shall be void, can anything be clearer than that it was not intended that it should be void, except as against such persons? When the legislature declared certain instruments void as to certain designated persons, it did not intend that they should be void except as against such persons. The expression of one thing is an exclusion of all others. The mention of certain persons excludes all other persons. If the legislature intended to make such instruments absolutely void, so that they could not be enforced at all, it would have declared them to be absolutely null and of no effect, instead of only declaring them to be void as against certain specified persons. But independent of the evident meaning of the statute, we think the reason and theory of the law warrants only this view. It has always been a maxim of our jurisprudence that a man shall

not be heard to plead his own fraud; and the English courts from the earliest time have refused to hear a suitor who sought to avoid the consequences of his acts by showing his own turpitude. Again, to allow a man to take advantage of his fraud, is to further his corrupt purpose; for he may, as in this case, simulate debts to get advantage of his creditors, and when he has consummated his purpose then ask and obtain relief of the courts from the very corrupt acts whereby he succeeded in deceiving or defrauding them. The courts should so construe the law, if possible, as to make it hazardous for dishonest persons to even attempt a fraud; and that can in no wise be so effectually accomplished as to inforce fraudulent instruments against them. But, independent of these considerations, the great weight of decisions are in our favor. Every decision holding that a person shall not be allowed to show his own fraud to defeat a conveyance, is equally an authority that he shall not do so to defeat any other instrument. No distinction can be made under the statute between different instruments. All instruments are grouped together in the statute, and the same language is used respecting them all; hence, if a conveyance to defraud creditors be good and valid between the parties, so must any other instrument executed for the same purpose be so. Under the statute of 13 Elizabeth, no English court has ever held any such instruments as are mentioned in the act to be void between the parties, nor can we find any case in this country holding a conveyance or executed contract to be so; and as the statute does not warrant any distinction between such instruments, the courts have no right to make it. (32 Ind. 486; 8 Porter, Ala. 351; 1 Blackf. 262: 18 Me. 231; 9 B. & C. 532; 4 Mass. 354; 5 Mass. 109; 5 Binn. 109; 20 Pick. 247; 3 Watts & S. 255; 22 Id. 253; 3 Mason, 378; 36 Me. 47; 13 Penn. St. 488; 1 Ohio, 469; 4 Ired. 102; 2 Southard, 738; 2 Halsted, 173; 10 Conn. 69; 28 Wis. 637; *Phillpots* v. *Phillpots*, 10 Com. Bench. 85; *Roberts* v. *Roberts*, 2 Barns & Ald. 376; 1 Smith's Lead. Cases, 699, 702–703; 12 Harris, 62; 1 Casey, 441; 34 Cal. 81; 7 Exch. 780; 11 Serg. & R. 164; 1 W. Black. 364; 6 Watts, 453; *Stewart* v. *Iglehart*, 7 Gill.

& J. 132; *Sedwick* v. *Sedwick*, 6 Gill. 29; 5 Md. 44; 4 Md. 435; 16 Penn. St. 58; 1 Day, Conn. 136; 29 Texas, 450; 8 Conn. 62; 19 N. J. 42.)

II. Fraud must be specifically and minutely pleaded. (Kerr on Fraud and Mistake, 365; 39 Cal. 123; 30 Cal.) 673.

III. It was error for the court to allow evidence contradicting the admissions of the answer. And this was not cured by the fact that the answer was afterward amended. The court compelled us to try the case on the answer as it originally stood. We had the right to believe that the fact that the note and bill of sale were executed on different days was admitted; upon that belief we went to trial, but without any amendment defendant was allowed to prove differently. We contend that if an objection be made to evidence on the ground that the pleadings do not admit of, the pleader must then ask to amend, and that he cannot go on and try his case, the evidence being improperly admitted, and then cure such error by afterward amending his pleading.

V. Small's book was inadmissible in evidence, because it was not such book as is allowed in evidence. (1 Greenleaf on Ev., secs. 118–19 and note.)

VI. Small's testimony as to the date the horses left his ranch was inadmissible, because he had no recollection of such dates even after an examination of his memorandum. (1 Greenleaf on Ev. secs. 436 *et seq.*)

VII. The money paid on a fraudulent contract cannot be recovered back; therefore the court erred in this case in compelling the plaintiffs to apply such money on the other notes; for it amounted to nothing but allowing the defendant to recover money paid on such contract. (See authorities on first point, and also 23 N. H. 128.)

VIII. Costs cannot be awarded against one who recovers judgment as in this case, unless he not only makes an actual tender, but pleads it.

*M. N. Stone*, for Respondent:

I. The court below did not err in admitting the testimony of the witness, Mrs. Smith. The answer and amendments

thereof set up valid defenses to the action.   The defense of want of consideration is valid, as shown by the following authorities: 2 Parsons on Notes and Bills, 501-2; 521-2; 6 Parsons on Contracts, 249 and authorities cited; *Wearse* v. *Peirce*, 24 Pick. 143; *Barker* v. *Prentiss*, 6 Mass. 433; *Dickinson* v. *Lewis*, 34 Ala. 638; *Harwood* v. *Knapper*, 50 Mo. 457; *Tucker* v. *Smith*, 4 Green (Me.) 418.

The point made, that we have the right to plead and prove fraud in the execution of the note, is sustained by the following authorities, which announce the long-settled law upon the subject: *Nellis* v. *Clarke*, 20 Wend. 24; *Goudy* v. *Gebhart*, 1 Ohio St. 362; *Walker* v. *McConnice*, 10 Yerg. (Tenn.) 228; *Smith* v. *Hubbs*, 1 Fairf. (Me.) 71; *Hoover* v. *Pierce*, 27 Miss. 13; *Holeman* v. *Johnson*, 1 Cowp. (Eng.) 341; *Randall* v. *Howard*, 2 Black. (N. J.) 585; *Valentine* v. *Stewart*, 15 Cal. 387; *Ager* v. *Duncan*, 50 Id. 327; *Collins* v. *Blantern*, 1 Sm. Lead. Cases, part 1, 700-4; *Harwood* v. *Knapper*, 50 Mo. 457; *Briggs* v. *Merrill*, 58 Barb. 396; *Nellis* v. *Clarke*, 4 Hill. 426; *Hamilton* v. *Scull's Administrator*, 25 Mo. 166; *Fenton* v. *Ham*, 35 Id. 409; *Welby* v. *Armstrong*, 21 Ind. 489; *Mosely* v. *Mosely*, 15 N. Y. 335; *Tucker* v. *Smith*, 4 Green. (Me.) 418; *Bailey* v. *Foster*, 9 Pick. 140; *Powell* v. *Truman*, 8 Jones (N. C.) 436; *Church* v. *Muir*, 33 N. J. 319; *Harvin* v. *Weeks*, 11 Pick. (S. C.) 601; *Norris* v. *Norris, Adm'r*, 9 Dana, 318; Bump on Fraud. Conv., 449.

II. The note is illegal and void under the statute of Nevada.   (1 Comp. Laws, Mo., sec. 2441; *Collins* v. *Blantern*, 1 Lead. Cases, part 1, 676-8, and cases cited.)

III. The defenses of want of consideration are sufficiently pleaded in the answer and amendments.   (*Collins* v. *Blantern, supra*, 688-9.)

IV. Small's evidence showing the dates he received and returned the horses was admissible.   (*Merrill* v. *R. R. Co.*, 16 Wend. 586; *Bank* v. *Culver*, 2 Hill, 531; 19 Wend. 162; 1 Rawle, Penn., 152; *Davenport* v. *Cummings*, 15 Iowa, 219; 1 Green. on Ev., 115-16, and cases cited; *Bunker* v. *Shed*, 8 Met., (Mass.) 150.)

V. The amendments to the answer were properly allowed

by the lower court. They were allowed in furtherance of justice and in order to make the pleadings conform to the proofs introduced by defendant. Such amendments are always allowed under our system of practice. If they operated as a surprise to plaintiff it was his privilege to ask for a continuance which he failed to do. They did not however operate as a surprise. The facts disclosed by the amendments were from the beginning of the suit fully known to plaintiff. (1 Comp. Laws, secs. 1131–33–34; *Tryon* v. *Sutton*, 13 Cal. 494; *Pierson* v. *McCahill*, 22 Cal. 131; *Kirstein* v. *Madden*, 38 Cal. 162.)

VI. The denial "upon information and belief" in the amendment to the answer is sufficient. (*Kirstein* v. *Madden*, 38 Cal. 162, and cases cited.)

VII. The tender and payment into court of more than the amount of money due plaintiff was sufficient. At all events the judgment would only be modified in respect to costs if such payment was not sufficient. The judgment will not be reversed on that ground alone if correct in all other respects. (*Union Water Co.* v. *Murphy F. F. Co.*, 22 Cal. 632; 1 Comp. L., sec. 1400; *Choteau* v. *Suydam*, 21 N. Y. 185; 15 How. 315; 20 How. 215.)

VIII. There was no money paid by the deceased on the fraudulent note sued on. There is no evidence in the case showing such fact; nor is there any evidence in the case tending to show that appellant had any authority from any one to credit any money received by him from deceased upon such note.

IX. Conceding, for argument sake, that the statute of frauds does not make the note invalid, still we claim the plaintiff could not recover by force of the provisions of section 2441, 1 Compiled Laws. The purpose of this act is not only to punish but to prohibit the making of the contracts mentioned therein. It is not necessary that such purpose should be expressed in words. (*De Bergins* v. *Armistead*, 10 Bing. 107; *Bartlett* v. *Vinor*, Carth. 252; 1 Smith's Lead. Cases, 681; Story on Prom. Notes, 6 Ed., sec. 189; *Davenport* v. *Cummings*, 15 Iowa, 225.)

By the Court, HAWLEY, C. J. :

This action was brought by plaintiff to recover the sum of twenty-two thousand eight hundred and twelve dollars and fifty-nine cents, alleged to be due upon certain promissory notes executed and delivered to him by T. F. Smith, since deceased.

The only controversy between the parties is as to the validity of one note in the sum of sixteen thousand dollars. The defendant claims that this note was made and delivered to plaintiff, without consideration, for the sole purpose of protecting the property of the deceased from one George T. Marye, who had instituted an action against him to recover a large amount of money; that it was understood and agreed between plaintiff and said deceased at the time of the execution of said note that it should be canceled whenever so desired, and that the same was not to be held by plaintiff as a valid note against him. This note is alleged in the complaint to have been executed and delivered on the first day of July, 1874. The original answer refers to it as "bearing date on the first day of July, 1874."

When the defendant offered testimony tending to establish the fraud in the execution of the note, the plaintiff objected to its introduction, among other reasons, upon the ground that the facts and circumstances constituting the fraud were not sufficiently pleaded. As a circumstance tending to establish the fraud the defendant offered testimony to prove that the note was made on a different day from its date, and that it was, in fact, executed and delivered to plaintiff on the same day as a certain bill of sale conveying to plaintiff three horses, in furtherance of the fraudulent purpose before mentioned, to wit: in August, 1874, and that after Marye had been defeated in his action, plaintiff had voluntarily surrendered the horses described in the bill of sale to said Smith prior to his death. Plaintiff objected to any evidence tending to show that the note was antedated, upon the ground that the answer admitted that the note was executed on the day it bore date.

The court overruled all of plaintiff's objections, and

allowed the defendant to introduce his testimony under the original answer.

During the progress of the trial, and after the testimony tending to establish the fraud had been admitted, the court allowed the defendant, against the objections of plaintiff, to amend his answer so as to conform to the proofs in the several respects wherein it was claimed to be deficient, and among others, the court allowed defendant to amend his answer so as to deny that the proceeds of one hundred shares of Overman stock were ever, by the direction of said T. F. Smith, credited on the sixteen thousand dollar note.

The plaintiff having only recovered a judgment for three thousand eight hundred and twenty-seven dollars and eighty-three cents, appeals from the judgment and also from an order of the court refusing him a new trial.

1. It is claimed by appellant that the court erred in allowing the amendments to the answer to be made after the testimony had been introduced.

Undoubtedly the best course for defendant to have pursued, if he doubted the sufficiency of the averments in his answer to sustain the proofs he intended to offer, would have been to have asked leave of the court to amend at the time plaintiff's objections were made. But the course pursued in this case, although unusual and irregular, does not authorize us to set the judgment aside.

Courts, in allowing pleadings to be amended, are necessarily clothed with discretionary power which cannot, owing to the varying circumstances of each particular case, be governed by any general rule. The vital question is whether the court has grossly abused its discretion in this respect, or whether, by the allowance of the amendments, manifest injustice has been done to appellant. The defendant, in asking the amendments at the time he did, must, in the absence of any showing to the contrary, be presumed to have offered to submit to any terms which the court might see fit to impose. There is no showing that appellant was misled to his prejudice, or that he was deprived of introducing any testimony that he might wish to offer in consequence of the amendments, or of the right to move for a continuance.

If he was surprised, he ought to have moved the court for a continuance. This court has always been quite liberal in sustaining the action of the lower courts in allowing or refusing amendments to pleadings, to the end that substantial justice may be done between the parties.

The same rule prevails in California. (*Peters* v. *Foss,* 16 Cal. 357; *Lestrade* v. *Barth,* 17 Cal. 289; *Pierson* v. *McCahill,* 22 Cal. 130; *Stringer* v. *Davis,* 30 Cal. 318; *Clark* v. *Phœnix Ins. Co.,* 36 Cal. 168; *Kirstein* v. *Madden,* 38 Cal. 162.)

In *Lestrade* v. *Barth,* the court say: "We have repeatedly held that it is within the power of the court below to grant amendments whenever, at any stage of the trial, they are necessary to the purposes of justice."

In *Kirstein* v. *Madden,* the court say: "When an offer to amend is made at such a stage in the proceedings that the other party will not lose an opportunity to fairly present his whole case, amendments should be allowed with great liberality."

The amendments allowed in this case were authorized by section 68 of the civil practice act, and as it does not in any manner affirmatively appear that appellant suffered any injury thereby, the judgment will not, upon this ground be disturbed.

2. Appellant contends that the evidence of fraud in the execution of the note was inadmissible, because the note, although void as to creditors under the statutes of this state, was valid as between the parties. The language of the statute is as follows: "Every conveyance or assignment, in writing or otherwise, of any estate or interests in lands, or in goods in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents and profits thereof, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, decree or judgment suffered, with the like intent, as against the persons hindered, delayed, or defrauded, shall be void." (1 Comp. L. 297.)

The argument of appellant is, that the legislature having

declared the contract void as against creditors, the maxim *expressio unius est exclusio alterius* applies, and that it was the intention of the legislature only to make such contracts void as to creditors, leaving them valid as between the parties. It is also claimed that the reason and theory of the law, independent of the meaning of the statute, sustain the position that no man shall ever be allowed to plead his own fraud, and, finally, it is contended that the great weight of the decisions support the views expressed by appellant, and numerous authorities are cited to the effect that a conveyance made to defraud creditors, though void as to creditors, is good as against the grantor and his heirs.

This general proposition is sustained by all the decided cases. But counsel for respondent, while admitting the correctness of the rule as applied to executed contracts, contends that the rule is different when applied to executory contracts. Whether there is any difference in the rule in this respect is the hinge upon which the whole controversy upon this point must eventually turn. Upon the part of appellant it is claimed that where the fraudulent transaction does not appear upon the face of the instrument, but is interposed by way of defense, the defendant becomes the actor, and the maxim *in pari delicto* applies against him and not in his favor.

Upon the part of the respondent it is claimed that courts will not aid either party in enforcing an illegal executory contract: nor if executed will they aid either party in setting it aside, or in recovering back what has passed under it; that when the parties to an illegal or fraudulent contract are *in pari delicto* the law will not be the willing instrument of of its own subversion, and to every appeal for assistance replies *in pari delicto, portior est conditis defendentis.*

It must be admitted in the outset that there is a great diversity of opinion upon the question. Although very few of the authorities cited by appellant discuss the point whether there is any difference in the rule when applied to executory contracts, yet the reasons stated for the rule are in some of the cases, certainly applicable to executory as

well as executed contracts. Especially is this true of the reasoning of several of the cases decided in Pennsylvania and some of the authorities found in Massachusetts.

Moreover, some of the decisions in other States were rendered in cases where the contract sued upon was executory, and the opinions are based solely upon the general rule as applied to executed contracts.

We are of opinion that much of the confusion has arisen from the fact that courts have often given a reason that was not called for by the facts of the case, and have failed to consider the question whether or not there was in fact any difference in the rule when applied to executory contracts.

The true value of any decision as an authority entitled to consideration is its applicability to the facts of any given case, as well as the principles of law involved therein.

We have examined all the English cases cited by counsel. They shed but little light upon the real question involved in this case.

It may, for the purposes of this opinion, be admitted that the statute of this state is substantially the same as the statute of 13 Elizabeth, although from a comparison of that statute found in 4 Bac. Abr. 401, we think its language gives further support to the position contended for by appellant than is found in our statute. It declares that certain enumerated conveyances, contracts in writing, etc., etc., devised and contrived of malice, fraud, covin, collusion or guile, to the end, purpose and intent to delay, hinder or defraud creditors, "shall be from henceforth deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, and every of them, whose actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries and reliefs, by such guileful, covinous, or fraudulent devices and practices, as is aforesaid, are, shall or might be in anywise disturbed, hindered, delayed or defrauded,) to be clearly and utterly void, frustrate and of none effect; any pretense, color, feigned consideration, expressive of use, or any other matter or thing to the contrary notwithstanding."

Now, it might with some force be argued that the word

*only*, as it appears in this statute, implies that, as between everybody but the creditors; the transactions mentioned therein should be valid, while the statute of this state simply declares that such contracts as against creditors shall be void and leaves the question as to the rights of the parties to be determined by the courts without any such implication. We only refer to this distinction for the purpose of showing that the statute of 13 Eliz. is certainly as favorable for appellants as are the provisions of our statute relating to the same subject.

The statutes of nearly all the states from which authorities are cited are either similar to the statute of this state, or have been by the decisions in the respective states declared to be substantially the same as the statute of 13 Eliz. The statute of 13 Eliz. is held in some of the cases to be either declaratory of the common law or an enlargement of its principles. In none of them is it claimed to be in derogation of the common law.

After examining all the authorities and considering the reasoning of the respective decisions, we are clearly of the opinion that the weight of reason and authority is decidedly opposed to the views contended for by appellant.

One of the earliest cases in the United States is that of *Smith* v. *Hubbs*, which was an action of assumpsit for goods sold and delivered. The facts show that the transaction was a fraudulent sale by a debtor to conceal his property from his creditors. It was there, as here, argued that no man could defend himself by alleging and proving his own turpitude; that when a plaintiff has proved the contract on which he has declared, and which appears to be fair and legal, the defendant shall not be permitted, by way of defense, to prove that the contract was fraudulent and illegal between the plaintiff and himself, and thus avail himself of his own wrong and violation of law. The court, in answering this argument, said: "There is a marked and settled distinction between executory and executed contracts of a fraudulent or illegal character. Whatever the parties to an action have executed for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb.

Whatever the parties have fraudulently or illegally contracted to execute, the law refuses to compel the contractor to execute or pay damages for not executing, but in both cases leaves the parties where it finds them. The object of the law in the latter case is, as far as possible, to prevent the contemplated wrong; and in the former, to punish the wrongdoer by leaving him to the consequences of his own folly or misconduct." (1 Fairf. 76.)

The subsequent cases of *Potter* v. *Yale College* (8 Conn. 52), and *Chapin* v. *Pease* (10 Conn. 69), cited by appellant, proceed upon other grounds, and do not in any manner, in our judgment, affect the doctrines enunciated in *Smith* v. *Hubbs*.

The supreme court of Tennessee, in *Walker* v. *McConnico*, decided that a promissory note, executed without consideration, and with the view to protect the maker's property from his creditors, could not be enforced by the payee against the maker. The court say: "The note having been made, and the deed of trust executed, to defraud creditors, the defendant cannot resist the execution of the trust according to the terms of the deed. But as the note was without consideration, and was executed to hinder and delay creditors, the promise to pay being executory, cannot be enforced." (10 Yerg. 229.)

Next comes the decision in *Nellis* v. *Clark*, where the question was whether a promissory note given in payment for property purchased with the intention to defraud creditors could be enforced. This question seems to have been very thoroughly considered. A majority of the court (Nelson, C. J., dissenting) sustained the rule laid down in *Smith* v. *Hubbs*. The failure of consideration is ignored and the decision is based upon the grounds of the common law. It was held that under the statute all contracts, both executory and executed, to defraud creditors were void only as against the creditors, and that under the statute of New York as well as the statute of 13 Elizabeth, the parties were excluded from its operation and left as they stood at the common law. Cowen, J., in delivering the opinion of the court quotes with approval the language of Lord Mansfield,

in *Holman* v. *Johnson* (1 Cowp. 341), as follows: "The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating or otherwise the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it, for, where both are equally in fault, *potior est conditio defendentis,*" and adds: "These remarks cover the whole ground on which Clark, the defendant, stands. * * Neither he nor Buttolph have any positive remedy on their own account. But as the law finds them, so it will leave them. They derive that kind of negative assistance which arises from their cases, being mutually such that the law will not tarnish its hands by recuring them from the mire." (20 Wend. 32.)

This opinion was affirmed in the court of errors (*Nellis* v. *Clark*, 4 Hill, 424), and the principles it enunciates have ever since been recognized as sound law by the courts of that state. (*Mosely* v. *Mosely*, 15 N. Y. 334; *Briggs* v. *Merrill*, 58 Barb. 399.)

In Kentucky, the same rule prevails: *Jones* v. *Read*, 3 Dana. 541; *Norris* v. *Norris*, 9 Dana. 318; so in South Carolina: *Harvin* v. *Weeks*, 11 Rich. 601; and in North Carolina: *Powell* v. *Inman*, 52 N. C. 28; *Powell* v. *Inman*, 53 N. C. 437; and Mississippi: *Hoover* v. *Pierce*, 27 Miss. 13; *Walton* v. *Tusten*, 49 Miss. 569; in Missouri: *Hamilton* v. *Scull's*

*Adm.* 25 Mo. 166; *Fenton* v. *Ham,* 35 Mo. 409; *Harwood* v. *Knapper,* 50 Mo. 457; in Ohio: *Goudy* v. *Gebhart,* 1 Ohio St. 263; *Bradford* v. *Beyer,* 17 Ohio St. 388; and New Jersey: *Church* v. *Muir,* 33 N. J. 319.

The court, in *Hamilton* v. *Scull's Administrator,* decided that it was a good defense to an action upon a promissory note, that it was given by the defendant to plaintiff to enable the plaintiff to hinder, delay, and defraud his creditors. Scott, J., in delivering the opinion, says: "There is no doubt of the correctness of the principle asserted in the case of *Brown's Administrator* v. *Finley* (18 Mo. 375), that one who has made a fraudulent conveyance of his property cannot, by alleging his own turpitude, be permitted to set aside his conveyance, and regain the possession of property which he has fraudulently aliened. To do this would be encouraging fraud, for thereby a party would be induced to make fraudulent alienations without any concern for the consequences, confiding in the privilege the law would confer of setting them aside afterward if they did not answer the ends proposed by them. In such cases the maxim applies, *nemo allegans suam turpitudinem est audiendus.* Having fraudulently passed away his property, the act is consummated; the deed is done, and the law will not relieve him from a situation in which he has been placed by his own fraud. But the case under consideration is different from that stated above. Here, the act is not consummated. This is but a promise, and the law allows the turpitude of the transaction to be shown with the same view as in the preceding case, to take away inducements to fraudulent conduct. What would give greater encouragement to fraud than for courts of justice to lend their aid in carrying them into execution? But, though the law suffers the transaction to be inquired into in the one case, and will not permit a party to expose his fraud in the other, yet this apparently inconsistent course arises from the different stages of the illegal acts at the time the inquiry is proposed, and is necessary to fulfill the purpose of the law with regard to fraudulent contracts, which is to refuse all aid to the parties thereto in carrying them into execution, for it will be ob-

served that in this case, while the law permits a party to raise the question of fraud, it is only done that it may, when the fact is established, refuse its aid to the party who has been concerned in it, and leave him just where he placed himself by his ill conduct. So in the end \* \* \* the law produces the same result in each case, which is a denial of all assistance to those who will soil themselves with a foul transaction." (Chitty on Contracts, 680.)

It is true that in Ohio the statute is different in its terms from the statute of this state or that of 13 Elizabeth, in that it enacts that the conveyances, etc., "shall be deemed utterly void and of no effect." But Thurman, J., in delivering the opinion in *Goudy* v. *Gebhart, supra,* disapproves the doctrine announced in *Findley* v. *Cooley,* 1 Blackf. 262, and quotes, with approval, the views expressed by the courts in *Nellis* v. *Clark, Smith* v. *Hubbs,* and other cases where the distinction between executed and executory contracts is observed, and declares that the court would have no hesitancy in following the rule as therein announced, even if the statute of frauds was precisely similar to that of Elizabeth. He refers to *Burgett* v. *Burgett* (1 Ohio, 469), where the court held that a conveyance executed for the purpose of defrauding creditors was void only as against creditors, and says that the question whether an executory contract made to defraud creditors could be enforced was left untouched, notwithstanding some of the reasoning of the court which ought not to be extended beyond the point there decided. And in closing the opinion the learned justice says: "Another question remains to be considered, namely: whether the defense in question is limited to cases where the facts are disclosed by the plaintiff's testimony. It is a maxim of the law, counsel say, that no one shall be permitted to aver or prove his own turpitude; and some elementary works and cases are cited where the proposition is thus stated. But an examination of the authorities will show that this statement is too broad. The true rule is that no one is allowed to set up his own iniquity to defeat an innocent person. But where the parties are *particeps criminis* the proof may come from the defendant."

The statute of New Jersey is substantially the same as the statute of 13 Elizabeth.

In *Church* v. *Muir, supra*, it was held that a note arising out of a contract designed to hinder or defeat the claims of creditors was invalid, and could not be enforced in a court of law between the parties.    Beasley, C. J., in delivering the opinion of the court, which was concurred in by all the justices, fully answers the argument of counsel, that the statute for the prevention of frauds does not invalidate the transaction except so far as it concerns the creditors, in language directly applicable to the facts of the case under consideration.  He says: "It is certainly true, the statute referred to does not, *proprio vigore*, annul beyond the extent thus defined, the conveyances and contracts at which it is leveled.    Nothing more than this was necessary to effect its purpose, which was the relief and protection of creditors against this class of frauds.    But it is also clear that it has no tendency to legalize any act which was not legal at the time of its enactment.  So far as respected creditors, it was an authoritative declaration, which removed all doubts that the contrivances denounced should be inoperative and void, but as to their effect upon the rights of other persons the act is silent.    The result is, that a demonstration that the statute in question does not define the rights of the parties to contracts which are void on account of their hostility to creditors does not by any means conclude the present inquiry, because the question still remains, how do such contracts stand with regard to the general principles of jurisprudence?

A contract, the purpose of which is to protect a debtor against the just claims of creditors, is an immoral act.  Such an affair is inimical to social policy.    It is in direct opposition both to the letter and spirit of the statute for the prevention of frauds.

In *Cadogan* v. *Kennett* (2 Cowp. 434), Lord Mansfield very truly remarked: "That the principles and rules of the common law, as now universally understood, are so strong against fraud in every shape that the common law would have attained every end proposed by the statutes." (13

Eliz., ch. 5, and 27 Eliz., ch. 4.) And there can be no doubt that the things prohibited by these statutes, from their inherent unlawfulness, would have been judicially annulled in favor of creditors. But if this is their character, on what ground can a party to one of these transactions ask a court of law to lend its aid to its inforcement? The general rule undoubtedly is, that courts will not assist a party either to execute or to undo an illegal transaction. If the forbidden agreement has been executed the parties are left where they have placed themselves; if it remains executory, its performance cannot be legally compelled. The principle is embodied in the old common law maxim: *ex turpi causa non oritur actio.* The rule has a wide scope, for it takes away all legal help from all contracts, whether under seal or by parol, which stipulate for the performance of an immoral act, or any act contrary to the provisions of a legislative act, or to the public policy of the common law. It is not necessary to refer to adjudications in support of a principle so universally admitted. The only doubt that can possibly be suggested is as to its application to a bargain made in fraud of creditors.

In the case of *Nellis* v. *Clark* (20 Wend. 37), Chief Justice Nelson, in a dissenting opinion, endeavored to draw a distinction between what he termed an illegal contract, in the strict sense of the term, and one fraudulent, as it respects creditors. To the former class he applied the maxim, *ex dolo malo non oritur actio,* but the latter he regarded as regulated by the statute of frauds, and not as altogether void, but as binding upon the parties. This view is not supported by any cases which bear upon the point, for those to which reference is made are authorities relating to executed and not executory contracts. But, it seems to me, the defect in the opinion is deeper than the mere absence of decisions which sustain it, because no attempt is made to explain how a contract, which is clearly against the policy of the statute of frauds, as well as against the general spirit of the law, is not, in any sense of the term, an illegal contract. In their essence and in their effects such contracts are as immoral and pernicious as many of

those which the law has declared to be utterly void. * * *
I can see no reason why contracts to defraud creditors
should stand on a different footing from the rest of those
embraced in the class to which they evidently belong.
They are hostile to fair dealing and commercial honesty,
and on this account should be subjected to the ban of out-
lawry. The law says to those who embark in such enter-
prises, in the language of Chief Justice Wilmot, in *Collins*
v. *Blantern* (2 Wils. 341): "You shall not stipulate for
iniquity, for no polluted hand shall touch the pure fountains
of justice."

Appellant has cited but two cases in his favor wherein
the courts discuss the question whether there is any differ-
ence between an executed and an executory contract. These
are *Springer* v. *Drosch*, 32 Ind. 486; and *Clemens* v. *Clemens*,
28 Wis. 637.

The decisions in Indiana are inconsistent. The reason-
ing in the case of *Findley* v. *Cooley*, is claimed to be in favor
of appellant. But the supreme court of that state in the
subsequent case of *Welby* v. *Armstrong*, refer to it only in
support of the rule that conveyances to hinder creditors are
not absolutely void, but are considered binding between
the parties. After stating that in New York this doctrine
was confined to executed conveyances, Hanna, J., in deliv-
ering the opinion, which was concurred in by all the jus-
tices, says: "It remains for us to say whether the distinc-
tion taken by the New York cases referred to is correct. It
appears to us the decisions named are founded on sound
sense and reason, and are in consonance with a line of de-
cisions adopted and followed by this court upon kindred
questions. We do not recollect, and have not been referred
to, any case in this court where this point arose, and the
distinction now taken was urged upon the attention of the
court; although, without a just regard to such distinction,
loose expressions may have been used which would appa-
rently conflict with the conclusion now arrived at." (21 Ind.
491.)

After these comments, it is rather strange, to say the
least, to find in *Springer* v. *Drosch*, the statement that this

question is, indeed, at rest, adverse to the views expressed in the last case cited, and that the rulings in Indiana are uniform upon the subject, " if we except the case of *Welby* v. *Armstrong* (21 Ind. 489), which, while professing to follow the case of *Findley* v. *Cooley, supra,* announces a doctrine in conflict therewith."

Justice Ray, in delivering the opinion in *Springer* v. *Drosch,* seemed to think it necessary to overrule *Welby* v. *Armstrong,* in order to defend Judge Blackford from the legal assaults made upon his reasoning in *Findley* v. *Cooley* by the court of New York in *Nellis* v. *Clark.* Neither Judge Blackford nor his decision required any such defense. It may be admitted that Judge Blackford is the fairest, most careful and able jurist that ever adorned the supreme bench of that state; and, in the judgment of the writer of this opinion, if this question was left to the legal profession of that state it would be so decided. But, like other men, he was not infallible, and, like other equally distinguished jurists, he was at times liable to err, and whatever made be said in regard to the correctness of his views, as expressed in *Findley* v. *Cooley,* it must be admitted that his decision was based upon the executed, not the executory contract, and that it nowhere appears that his attention was called to the distinction which exists between executed and executory contracts. This fact was recognized by the learned justice who wrote the opinion in *Welby* v. *Armstrong,* but was either overlooked or entirely ignored in the case of *Springer* v. *Drosch.* These conflicting opinions have a tendency to destroy the force and effect that might otherwise be given to the decisions in that state.

In this connection it is proper to add that the decisions in California are as conflicting and far more unsatisfactory than in Indiana. *Davis* v. *Mitchell* (34 Cal. 82), may be considered as favoring appellant, and *Ager* v. *Duncan* (50 Cal. 327), as favoring respondent; but the questions presented in these cases failed to elicit any discussion by the court, and neither of the opinions are sufficiently considered to entitle them to any special weight upon either side. The reasoning in the case of *Clemens* v. *Clemens, supra,* is

in favor of the position contended for by appellant. The court indorse the views expressed by Judge Blackford and, after a lengthy review of the authorities, adopt the rule as announced in *Dyer* v. *Homer* (22 Pick. 253).

*Dyer* v. *Homer*, is distinguishable from the case under consideration in this, that the note given in that case "was supported by a sale of property which, between the parties, was valid, and never was questioned by anybody else," and the court was not called upon to determine " whether it was right then to allow the defendant to show his own turpitude in giving a note, without consideration, for the purposes of fraud and imposition." Shaw, C. J. (as well as Morton, J.) bases his decision upon the ground that the case is distinguishable from cases where the "notes were made for the purpose of enabling the promisee to hold out a false appearance of contract when there was no real contract, whereas here was a contract good and valid as between the parties." In this respect the facts in *Dyer* v. *Homer*, were the same as in *Findley* v. *Cooley*. Neither of these cases, when properly considered, is, in our opinion, opposed to the position taken by respondent under the facts of this case. But whatever may be said of the opinion in *Dyer* v. *Homer*, upon which the court in *Clemens* v. *Clemens*, seemed specially to rely, we find the later decisions in Massachusetts, the facts of which are applicable to this case, announcing the rule in favor of respondent.

The court in *Steinberg* v. *Bowman*, in declaring that promissory notes given by a debtor to his creditor for twice the amount due, in order to enable the creditor to obtain a larger dividend under a composition deed between the debtor and all his creditors void, say: "The plaintiff, in taking the notes for this purpose, practiced a fraud upon the other creditors. The consideration of the notes was therefore illegal, and the notes were wholly void as between the parties." (103 Mass. 325.)

Now, let us look for a moment at the facts in the case at bar, as shown by the record before us. The appellant comes into court seeking to enforce a promissory note of sixteen thousand dollars against the estate of T. F. Smith,

deceased. No consideration whatever was given for the note. Appellant fraudulently colluded with said Smith, in his lifetime, to defraud Smith's creditors and the note was executed for the sole purpose of enabling appellant to hold out a false appearance of a contract, when, in fact, there was no real or valid contract between them. If we should adopt the rule contended for by appellant then the courts of this state would be placed in the singular and degrading attitude of being compelled to lend their aid in enforcing contracts made without consideration, and in not only protecting but rewarding a party who has been guilty of the basest degree of moral turpitude, if not of actual crime, against the people of this state. (1 Comp. L. 2441.) Such a proposition is, it seems to us, an outrage upon the name of justice and of law, a violation of every sense of reason and of right, and subversive of every legal principle that is deserving of sanction by the courts. On the other hand, by adopting the rule contended for by respondent, and which, in our judgment, as stated before, is fully supported by a decided preponderance of the authorities, the courts can never be called upon to legalize a fraud, or enable any man upon an executory contract to realize a profit from his own immoral conduct. The very moment the fraud is clearly proven the court refuses to grant any relief. If the fraud has been consummated it tells the party seeking to set it aside that if he has fallen into the trap which he set for his neighbor, there he must remain and suffer the consequences of his own turpitude. If it requires the action of the court to consummate the fraud, then it tells the plaintiff, your hands, as well as the defendant's are polluted, and you shall not be allowed any protection in your brazen attempt to gain profit by your own iniquitous conduct. Whenever, in this manner, an executory contract is tainted with fraud, the court refuses to enforce it, and it makes no difference whether the fraud is shown by the plaintiff or defendant.

We have, by extended quotations from the decided cases, endeavored to show that in whatever light this case may be considered, whether controlled by the provisions of the statute of this state, the rules of the common law, the rea-

son, theory or public policy of the law, or the weight of authority, the same result is ascertained.   *Ex dolo malo non oritur actio.*

Entertaining these views, it is unnecessary to consider what effect, if any, the act relating to offenses committed by fraudulent persons (1 Comp. L. 2441), would have upon the contract.

3. Appellant claims that the court erred in compelling him to apply the proceeds derived from the sale of one hundred shares of Overman stock, amounting to five thousand two hundred and twenty-two dollars and twenty-five cents, upon the valid notes, and argues that this was in fact allowing defendant to recover back money paid under the alleged fraudulent contract.

Our attention has not been called to any evidence tending to show that Smith ever authorized appellant to appropriate this money toward the discharge of the fraudulent note, or that the appropriation was made with Smith's knowledge or assent.   In the absence of any such a showing, we think the law compelled appellant to appropriate the money upon the valid notes.

4. The court did not err in admitting the testimony of the witness Small as to the dates he received and returned the horses described in the bill of sale.   This witness testified that he had no way of fixing the dates, except by referring to his book.   But his testimony tended to show that the book referred to, and which he was permitted to examine in order to refresh his memory, was a book of original entries made by himself; that the entries were made at the time of the occurrences, and that the dates were correct. Under such a state of facts it cannot be said that his testimony was mere hearsay.   We are of opinion that the testimony was clearly admissible.   (1 Green on Ev. secs. 436–7; *Bank of Monroe* v. *Culver*, 2 Hill. 535.)

5. Lastly it is contended that the court erred in taxing costs against appellant.

The record shows that after the jury was impaneled and before the examination of witnesses commenced, the defendant brought into court and tendered to plaintiff ten

thousand seven hundred and fifty dollars in gold coin in satisfaction of the amount sued for in this action. This was refused by plaintiff upon the ground that no tender had been pleaded in the answer, and the further ground "that plaintiff claims the full amount prayed for in his complaint." The tender was evidently made to cover the amount due on the valid notes, independent of the proceeds of the sale of Overman stock, which the defendant claimed upon the trial was sold without authority. The objection extends only to the question of costs, and does not reach the merits of the case. (*Schroeder* v. *Gemeinder*, 10 Nev. 367.) The amount tendered was largely in excess of the amount recovered. If the objection that the tender was not pleaded had been the only objection made, it would have been good as against all the costs that plaintiff had incurred up to the time the tender was made in open court; but plaintiff claimed the full amount prayed for in his complaint. The disputed controversy was his right to recover upon the sixteen thousand dollar note. The defendant admitted the validity of the other notes, and tendered the amount due thereon, which was refused.

The record fails to state what costs were allowed, and we are, therefore, unable to determine whether any error occurred in taxing the costs. The plaintiff was only entitled to recover the general costs of the suit incurred prior to the time of the tender. He was not entitled to any costs whatever relating specially to the sixteen thousand dollar note, because upon that note the defendant obtained judgment. The defendant was entitled to recover all costs that accrued after the tender was made and all other costs relating specially to the sixteen thousand dollar note. From the amount of costs allowed to defendant it would seem that no mistake had been made in this respect; but if an error has occurred the court below will, upon proper notice, allow the costs to be retaxed in accordance with the views herein expressed.

In all other respects the judgment of the district court is affirmed.